**Amos EVANS, Petitioner,**

v.

**George A. KROPP, Warden State Prison of Southern Michigan, Respondent.**

**Civ. A. No. 28047.**

United States District Court
E. D. Michigan, S. D.

May 19, 1966.

Phillip Craig Whaley, for petitioner Amos Evans.

Frank J. Kelley, Atty. Gen., by Robert J. Deitrick, Asst. Atty. Gen., for the State of Michigan.

McCREE, District Judge.

Petitioner is presently confined in State Prison of Southern Michigan, where he is serving a sentence of life imprisonment following his conviction of Murder, Second Degree, entered upon a plea of guilty. His petition for habeas corpus relief, filed in *propria persona*, is discursive and imprecise. Nevertheless, the court deduces therefrom that he contends that his constitutional rights were violated, *inter alia*, in the following particulars: 1) nondisclosure to the trial court of evidence of petitioner's mental incompetency, 2) ineffective assistance of counsel, and 3) involuntary nature of guilty plea because of insanity and drugs.

A hearing was held pursuant to an order to show cause and on respondent's motion to dismiss. At that time, the court found, over respondent's objections, that petitioner had exhausted his state remedies. Petitioner had filed with the trial court a motion to withdraw his plea or for a new trial. This motion was denied. An application for delayed appeal was denied by the court of appeals. Petitioner then filed in the Michigan Supreme Court an application for leave to appeal, setting forth as grounds therefor that he had been denied the effective assistance of counsel and that his plea of guilty was involuntary because of his having been treated with drugs following his attempted suicide. The Michigan Supreme Court denied this application in a cursory opinion which merely stated that the appeal did not show a meritorious basis and that the decision of the court of appeals was not clearly erroneous.

After the hearing on the motion to dismiss and the order to show cause, the court ordered the writ of habeas corpus to be issued and appointed counsel to represent petitioner. A hearing was held for the purpose of taking testimony on the factual allegations of the petition. The court finds the following facts.

Petitioner was arrested in November, 1962 on a charge of first degree murder arising out of an altercation following a traffic accident, and was held in the Wayne County Jail for trial. Shortly after his arrest, at the suggestion of someone in the jail, he retained John D. O'Connell, Esq. to represent him in this matter.

On January 22, 1963, petitioner made a serious suicide attempt by slitting the side of his neck with a razor blade. He was taken by a sheriff's deputy to Detroit General Hospital where the wound was sutured. He was then committed to the psychiatric ward in a special section reserved for prisoners where he was treated for the next ten days by a psychiatric resident. The diagnosis of petitioner's condition made by the treating psychiatrist and concurred in by the Chief of the Department of Psychiatry, was that petitioner was suffering from a psychosis, a schizophrenic reaction with a schizo-effective disorder, and that his prognosis was guarded to poor. In the doctor's opinion a sanity hearing was in order because he believed petitioner was not competent to stand trial. The psychiatrist testified that this conclusion was based upon observation of petitioner's condition: that he was confused about the charges against him; he was hallucinating; he was hearing voices making statements about him; he was afraid of some monster in the shadows; he was terrified of the idea of coming close to firing a gun and his judgment and insight were severely impaired.

The psychiatrist, in addition to making these entries in petitioner's hospital record, communicated his findings to the police guard having custody of petitioner at the hospital as well as to petitioner's lawyer, Mr. O'Connell.

Subsequently, on April 24, 1963, petitioner was brought before the Hon. Paul E. Krause,[1] Judge of Recorder's Court of the City of Detroit, for the purpose of offering a plea of guilty to Murder,

---

1. Judge Krause died subsequent to the filing of this petition, but before this testimony was adduced at the hearing on the writ of habeas corpus.

Second Degree. Upon examination, the court refused to accept the plea for the reason that it appeared from petitioner's response to the court's inquiry that he might have the defense of self-defense available to him which would require him to go to trial. However, on May 1, 1963, petitioner was again brought before the court and once more offered a guilty plea to the same charge. He was again examined by the court, with only passing reference to the possible defense which had thwarted the last attempt to plead guilty. At this later date, the plea was accepted and petitioner was referred to the appropriate agency for a pre-sentence report.

■ The record of the state court proceedings is devoid of any reference to petitioner's diagnosed mental illness.[2] Therefore, I find as a fact that the diagnosis of petitioner's mental illness and the recommendation of a sanity hearing, made by the treating psychiatrist of Detroit Receiving Hospital, were never brought to the attention of the trial court, either prior to conviction or prior to sentencing. I further find that the state is chargeable with knowledge of this highly relevant information which was communicated to a police guard having actual custody of the prisoner and which was part of the record of the hospital in which the prisoner was treated. The failure on the part of the prosecutor or petitioner's counsel to disclose to the court this extremely critical information prevented the court from making an adequate determination of petitioner's competency to offer a guilty plea. A

determination of competency would be essential in order to permit the court to determine whether the plea was offered freely and voluntarily, as is required not only by the Fourteenth Amendment, but also by Michigan statute and court rule. Mich.Stat.Ann. § 28.1058, Comp.Laws 1948, § 768.35; Mich. Gen.Ct.R. (1963) 785.3(2).

■ Respondent contends that in the absence of a showing of intentional, wilful suppression of evidence by the prosecutor, petitioner's right to due process was not violated. Respondent relies on the fact that the testimony does not disclose that the prosecutor's office had actual knowledge of petitioner's condition, since the doctor merely communicated his findings to the police guard and to the prisoner's attorney and there is no evidence that either of these individuals ever communicated this information to the prosecutor's office. There is no evidence in this case that the prosecutor intentionally suppressed this crucial information from the trial court and I make no such finding. However, I do find that the prosecutor was chargeable with the knowledge of the treating psychiatrist's diagnosis and recommendation of a sanity hearing communicated to the guards in charge of petitioner at the hospital. Failure to disclose this information to the court resulted in a fundamental unfairness. Without assigning blame to the prosecutor, I find that the proceedings which did not even consider petitioner's mental capacity, under the extreme circumstances of this case, did

2. Defense counsel's only reference to petitioner's condition was the following statement which was not pursued, as evidenced by the court's response.

MR. O'CONNELL: I might say the prosecutor had understood I was going to offer that plea. I want to say to your honor that the defendant does wish to re-offer this plea.

THE COURT: All right.

MR. O'CONNELL: He has not been well, your honor. He has lost a lot of weight and he did try to commit suicide, I understand.

THE COURT: When?

MR. O'CONNELL: A month or two ago.

THE COURT: Oh. I thought you said last night.

MR. O'CONNELL: No, sometime ago and he was in the Receiving Hospital some time following that.

THE COURT: All right. Do you wish to offer a plea to Murder in the Second Degree?

MR. O'CONNELL: Yes, your Honor.

not satisfy the constitutional requirements of due process.[3]

A similar case is Barbee v. Warden, Maryland Penitentiary, 331 F.2d 842 (4th Cir. 1964) (Sobeloff, C. J.) in which a state prisoner sought habeas corpus relief in the federal court. In that case, a pistol was identified during the trial as belonging to defendant and as being similar to the weapon used in the commission of the crime. Reports of ballistics and fingerprint tests made by the police department cast grave doubts upon defendant's participation in the crime. However, the contents of these reports were never disclosed either to defense counsel or to the court. It further appeared that the prosecutor may not have been informed of the existence of these reports. The state contended that petitioner was not entitled to habeas corpus relief because he failed to show intentional suppression by the prosecutor, actual prejudice because of the non-disclosure, or that defendant's attorney ever requested that the results of the tests, if any were taken, be revealed to him or to the court. The decision disposed of these contentions by holding that intentional suppression on the part of the prosecutor is not essential to habeas corpus relief when it appears that the unintentional nondisclosure of material information passes "beyond the line of tolerable imperfection and falls into the field of fundamental unfairness." Id. at 846. The court said further:

> Nor is the effect of the nondisclosure neutralized because the prosecuting attorney was not shown to have had knowledge of the exculpatory evidence. Failure of the police to reveal such material evidence in their possession is equally harmful to a defendant whether the information is purposely, or negligently, withheld. * * *

> The duty to disclose is that of the state, which ordinarily acts through the prosecuting attorney; but if he too is the victim of police suppression of of the material information, the state's failure is not on that account excused. We cannot condone the attempt to connect the defendant with the crime by questionable inferences which might be refuted by undisclosed and unproduced documents then in the hands of the police. Ibid.

The court concluded that the non-disclosed information was highly material and that a reasonable possibility existed that its non-disclosure might have contributed to the conviction. It refused to speculate on the possibility that the error might have been harmless because of the sufficiency of other evidence upon which defendant could have been convicted.

> One cannot possibly say with confidence that such a defect in the trial was harmless. A procedure so burdened with the tendency to harm accords a defendant less than due process. Id. at 847.

Finally, the court disposed of the question of whether defendant's constitutional rights were violated when defense counsel failed to ask for the results of the tests. It held that the possibility that a diligent defense counsel might have learned about the police reports was "too speculative a consideration to outweigh any unfairness that actually resulted at the trial." Id. at 845. The court went on to say:

> [This] is a case where the inference strongly projected by the state's evidence might have been destroyed by

---

3. See Pate, Warden v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.E.2d 815 (1966), wherein the court held that an accused had been deprived of due process of law under the Fourteenth Amendment by the state trial court's failure to afford him a hearing on the question of his competence to stand trial when the evidence raised a sufficient doubt as to that ques- tion. The proceedings in the instant case are much more unfair. If the information, which would have raised a serious doubt as to petitioner's competency, had been disclosed to the trial court, then the court would have been required under the *Robinson* doctrine to hold a full hearing on that issue.

**222**

other evidence in its possession but which the police concealed from the court, from defense counsel, and perhaps also from the State's Attorney. *In gauging the nondisclosure in terms of due process, the focus must be on the essential fairness of the procedure and not on the astuteness of either counsel.* Id. at 846. (Emphasis supplied.)

The court did not rest its decision solely on the purported nondisclosure to defense counsel, but specifically included the nondisclosure to the court in determining the critical question of the "essential fairness of the procedure."

 I agree with the reasoning of *Barbee*. It suggests that the controlling factor in a procedure where material information in the possession of any state agency is not disclosed to the court is not whether defense counsel knew or should have known about it, but rather whether the procedure as a whole comported with the requirements of due process. I cannot believe that any judge would accept a plea of guilty from a man who he knew had twice attempted suicide and had been diagnosed as a psychotic within ten weeks of the plea without first satisfying himself as to the man's mental competency to offer such a plea. I also agree with *Barbee* that the state is accountable for all information which comes within the knowledge of its agents while prosecuting a criminal matter, so that the knowledge of the police is clearly chargeable to the prosecutor, who is also merely an agent of the state. Unquestionably, petitioner's conviction could not stand if material information had been intentionally suppressed by the prosecutor. Brady v. State, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). However, the court's function in this case is not merely to superintend the behavior of the prosecutor, but also to determine whether the proceedings, as they were conducted, were fundamentally fair. I conclude that they were not, and petitioner's confinement resulting therefrom is illegal.

An additional question is whether petitioner was denied the effective assistance of counsel. His attorney, Mr. O'Connell, testified that he did not recall whether he was actually notified by the psychiatrist of petitioner's mental incapacity. He acknowledged knowing that petitioner had attempted suicide and had been hospitalized at least once during his incarceration. Mr. O'Connell further testified that had he known of his client's mental incapacity he might not have informed the court, and he might not have requested a sanity hearing because, in his judgment, his client would be far better off in a state prison from which he would be eligible for parole in ten years than he would in the state hospital for the criminally insane. He believed that the facilities of that hospital were so inadequate as to provide no effective treatment for a patient's illness and that commitment would result in permanent confinement in that institution.

 Without expressing any opinion on the merits of Mr. O'Connell's evaluation, I believe that no lawyer, as an officer of the court, has the right to make such a judgment. Regardless of his personal views, he may not withhold from the court such critical information as the diagnosed mental incompetency of his client and of his consequent possible inability to stand trial. I find that Mr. O'Connell's failure to inform the court of his client's mental condition deprived petitioner of the effective assistance of counsel which is guaranteed by the Fourteenth Amendment. Petitioner's confinement is in contravention of his constitutional rights for this reason also.

For the foregoing reasons, it is hereby ordered that the writ of habeas corpus be granted and that petitioner be released from custody unless an order in the state court is entered on or before May 31, 1966, granting him a new trial.

The court wishes to acknowledge the able services rendered by Mr. Phillip Craig Whaley, a member of the Detroit bar, who was appointed by the court to represent petitioner and who served without compensation.