**UNITED STATES of America ex rel. George DIBLIN, Relator,**

v.

**Harold W. FOLLETTE, Warden of Green Haven State Prison, Stormville, New York, Respondent.**

**No. 66 Civ. 2735.**

United States District Court
S. D. New York.

May 22, 1967.

OPINION

FREDERICK van PELT BRYAN, District Judge:

George Diblin, the relator on this habeas corpus application, is presently confined in Green Haven State Prison at Stormville, N. Y. under an 18 to 20 year sentence imposed in the Court of General Sessions of the City of New York on June 24, 1959. His pro se petition asked for the assignment of counsel to represent him. After reviewing his petition, the answering affidavit of the New York Attorney General and his "Traverse", I assigned Legal Aid counsel to the relator and he has been represented by that office throughout the balance of the proceeding.

On March 24, 1959 Diblin was indicted on 43 assorted counts of incest (two counts), second degree assault (ten counts), first and second degree sodomy (nine counts), carnal abuse of a child (ten counts), impairing the morals of a child (ten counts), and living on the proceeds of prostitution (two counts). He pled guilty to count one of the indictment (incest) to cover the entire 43 counts before Judge Samuel Pierce, Jr., in the Court of General Sessions on April 27, 1959. On June 24, 1959 he was sentenced by Judge Pierce as a second felony offender to a term of 18 to 20 years. Diblin was represented by private counsel on both plea and sentencing.

An appeal from the judgment of conviction was dismissed for want of prosecution by the Appellate Division, First Department, on February 21, 1963. An application by Diblin for a writ of error coram nobis was denied without a hearing by Judge Pierce on December 18, 1959. The order of denial was affirmed without opinion by the Appellate Division, People v. Diblin, 12 A.D.2d 924, 212 N.Y.S.2d 722 (1st Dept.1961) (Eager, J. dissenting on the ground that a hearing should have been granted), and by the Court of Appeals, 11 N.Y.2d 676, 225 N.Y.S.2d 754, 180 N.E.2d 908 (1962).

Diblin claims that his plea of guilty was induced by a promise of Judge

Anthony F. Marra, Legal Aid Society, New York City, for relator; Joshua Koplovitz, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen. of New York, for respondent; Murray J. Sylvester, Asst. Atty. Gen., of counsel.

Pierce communicated to him by his attorney, that he would receive a sentence of 5 to 10 years, and that he was sentenced to 18 to 20 years in violation of that promise. This claim raises the only major issue on this application.

In a letter to this court dated October 28, 1966, Diblin stated that Sidney L. Aronson, Esq., the attorney who had represented him at plea and sentence, visited him in prison on that date and "agreed to appear before the United States District Court for the Southern District of New York: in connection with my present 'habeas corpus' proceedings; as a witness for me; your petitioner at which time he will state under oath; that a promise of leniency was given to him by the General Sessions Court (Pierce, J.) as an inducement for me to plead guilty, etc." Diblin's assigned counsel thereafter interviewed Mr. Aronson and obtained an affidavit from him, the pertinent portion of which reads as follows:

"Prior to the entry of any plea, Judge Pierce, the Assistant District Attorney, and I had an off-the-record discussion with regard to a possible disposition.

"Following agreement by the Assistant District Attorney to accept a plea of guilty to the first count (incest) to cover the entire 43 count indictment. [sic] Judge Pierce asked the District Attorney what the crime 'called for.' The Assistant District Attorney replied '10 to 20.' Whereupon Judge Pierce answered 'Yes.'

"The petitioner then turned to me and told me that he would take the plea. A guilty plea was then entered on count one to satisfy the indictment.

"It was my impression from the above-noted colloguy [sic] between Judge Pierce and the Assistant District Attorney that Judge Pierce had indicated that the sentence would, in fact, be 10–20 years. I believe that petitioner was under the same impression.

"I was quite surprised when Judge Pierce ultimately imposed the 18–20 year sentence."

Relator's counsel then asked for an evidentiary hearing. This application raised preliminary questions which must be disposed of before the merits are reached.

## I.

The state has taken the position that since Diblin now relies on the Aronson affidavit his petition to this court should be denied for failure to exhaust state remedies without prejudice to a renewal of his coram nobis application in the state courts.

The state argues that Diblin was denied a hearing in his state coram nobis proceeding for the reason that his claim of a guilty plea induced by a broken promise of leniency was not corroborated by an affidavit of the attorney who represented him when the plea was taken, as required under People v. Scott, 10 N.Y.2d 380, 223 N.Y.S.2d 472, 179 N.E. 2d 486.

In *Scott* the petitioner contended that his guilty plea was induced by a promise of a light sentence which was not kept, a promise allegedly conveyed to him by his attorney. In affirming the denial without a hearing of his coram nobis petition, the Court of Appeals said:

"* * * Assuming the truth of the allegation of his petition that his attorney told him that if he pleaded guilty he would receive a maximum sentence of 5 years, it would be necessary for him in order to succeed to establish that this allegedly broken promise had been made to his attorney by the Judge or District Attorney. Any substance to this *coram nobis* proceeding would depend upon the testimony of the lawyer who represented him at the time of his plea. It was not error to have insisted that petitioner obtain an affidavit from this lawyer who is living and available, as a minimum earnest of good faith to justify the granting of a hearing." 10 N.Y.2d

at 381–382, 223 N.Y.S.2d at 473, 179 N. E.2d at 486.

The state urges that since no corroborating affidavit was submitted by Diblin on his earlier coram nobis petition, the state courts should now be given the opportunity in the first instance to pass on the sufficiency of the Aronson affidavit in the light of *Scott.*

The state's argument is not unpersuasive. When the state took this position, counsel for the relator agreed that he would renew Diblin's coram nobis application in the state courts provided the state would consent to grant him an evidentiary hearing in that proceeding. However, the state would go no farther than to say that the question of whether a hearing would be granted in such a proceeding must be left to the state courts to decide. Thus it becomes necessary to pass on the contention that failure to exhaust state remedies requires the dismissal of this application.

▊ It certainly cannot be said that the Aronson affidavit corroborates Diblin's claim that he was promised a lighter sentence than he received as an inducement to plead guilty, or, indeed, confirms any significant details of his version of what occurred on the occasion of his plea. It is doubtful, to say the least, that the state courts would consider the affidavit sufficient under *Scott.* In the circumstances it is likely that further resort to the state courts would be a futile exercise, resulting only in a renewal of Diblin's application before this court in the same posture in which it is now.

For that practical reason his application will not be dismissed for failure to exhaust state remedies.

## II.

I turn then to Diblin's contention that he is entitled to an evidentiary hearing in this court before the merits of his present application are determined.

In the papers submitted in support of his application Diblin claims that when he was called for pleading to the indictment before Judge Pierce in the Court of General Sessions on April 27, 1959, there was an off the record conference at the bench between his counsel Aronson, the Assistant District Attorney and the court; that Aronson then informed him that "the court and the prosecuting attorney had promised me a sentence of 5 to 20 yrs. if I pled guilty;" and that he then entered a guilty plea to count one of the indictment on that understanding. Diblin further claims that while he was in the detention cell outside the courtroom *before* being called for pleading, Aronson came into the cell and told him "of the court's promise of leniency;" this conversation allegedly occurred in the presence of an unnamed and unidentified other person in the detention cell "who is willing to testify to that fact if subpoenaed."

As might be expected there is nothing in the minutes of the pleading before Judge Pierce concerning any of this. But it does appear that when Diblin was asked how he wished to plead Aronson and Assistant District Attorney Eisman approached the bench and conferred with the court off the record. Aronson then informed the court on the record that Diblin offered to plead guilty to count one with the permission of the District Attorney and consent of the court. The court proceeded to question Diblin concerning the voluntariness of his plea, his understanding of the crime to which he was pleading guilty, and that he would have to be sentenced as a third felony offender.[1] The court asked Diblin "has anyone made any promises to you as to what your sentence would be in order to get you to take this plea?" Diblin answered "No sir." After Diblin admitted his guilt, the plea was accepted.

At the sentencing hearing before Judge Pierce on June 24, 1959, some two months later, Diblin was given an opportunity to withdraw his plea of guilty in view of letters which he had written to the judge denying his guilt. After conferring with his attorney he reaffirmed

---

1. As it turned out Diblin was sentenced as a second felony offender.

his guilt of count one of the indictment and his understanding that he was to be sentenced as a second offender. Mr. Aronson then addressed the court at some length on the question of sentence. During the course of Mr. Aronson's remarks the following colloquy took place:

"Mr. Aronson: Now, your Honor, we once spoke here, at the time we took the plea, and I don't say that your Honor committed yourself by anything that you said, but we did speak about a five-year minimum sentence.

"Judge—

"The Court: Wait a second. Let me get this straight. It's a five-year minimum. I mean that's what he must get.

"Mr. Aronson: That's right.

"The Court: That's a five-year minimum. That's what I mean by 'five-year minimum.'

"Mr. Aronson: Yes.

"The Court: Not that he would get a five-year sentence. He must get at least five years.

"Mr. Aronson: I think that's what I meant to say, sir.

"The Court: I want it very plain.

"Mr. Aronson: I think I said it. And if I said anything different than that, I would like to withdraw what you think I may have said."

Aronson then completed his statement and the court, after a strong characteriza-tion of the defendant's conduct, imposed the 18 to 20 year sentence. There was no comment by Diblin or his counsel on the sentence imposed.

It is plain from this record that no promise of a 5 to 20 year sentence was made to Diblin's attorney at the off-the-record bench conference between Aronson, Assistant District Attorney Eisman and Judge Pierce at the pleading hearing. Aronson's artfully drawn affidavit, already quoted, not only lends no support to such a claim but, in effect, contradicts it. Far from stating that there was a *promise* by the court as to sentence Aronson says that he gained the *impression* from a colloquy between the court and Mr. Eisman that the sentence would be 10 to 20 years. Nor does he say that he conveyed this to Diblin but that he *believed* Diblin was under the same impression. This was evidently no more than wishful thinking.

That any such impression was unjustified and in any event was dispelled is made plain by the colloquy between Mr. Aronson and the court at the sentencing hearing regarding a 5 year minimum already quoted.

But there is much more than the Aronson affidavit to belie the claim which Diblin asserts here. At my request the state submitted affidavits both of Judge Pierce[2] and Assistant District Attor-

---

2. "I was the Judge in the Court of General Sessions in 1959 who took George Diblin's plea and who subsequently sentenced him to 18 to 20 years imprisonment. Generally speaking, because of the tremendous volume, I do not remember much about cases in which I accepted pleas of guilty while I was a Judge in 1959 and 1960. However, as the Diblin case was a very extraordinary one, I remember a good deal about it.

"It was my practice while on the bench not to make any promises as to sentences in exchange for pleas from defendants. I do not recall what was said in the off-the-record conference I had with the defendant's attorney and with the Assistant District Attorney at the bench prior to the time the plea in this case was taken. I can say unequivocally, however, that it did not involve my promising the defendant anything in exchange for his plea of guilty. The nature of the defendant's crime was such that I am absolutely positive that I would have waited to study the probation report before making any pronouncements whatsoever about the defendant's sentence.

"After receiving the probation report on Mr. Diblin, I was convinced that his deeds constituted some of the most corrupt acts I had ever encountered in my experience as an Assistant District Attorney of New York County and as a Judge on the highest criminal trial Court in that County. It was only after weighing the facts and circumstances of this case most carefully that I decided the

ney Eisman,[3] the pertinent portions of which appear in the margin. Both Judge Pierce and Mr. Eisman have clear recollections of what happened in this case, as well they might in view of the particularly shocking nature of the crimes involved. They both categorically deny that any promise of leniency was made to Diblin or his attorney. Indeed, Judge Pierce says that under no circumstances would he have made such a promise in this egregious case. Mr. Eisman flatly states that he would not have consented to accept the plea had such a promise been made. These affidavits make it plain that no promise was made either to Diblin or his attorney. Moreover, Diblin's claim is contrary to his own statement on the pleading record that no sentencing promise had been made to him.

Thus, Diblin's claim is left with no support except his own statements as to what he alleges his retained counsel told him about the promise during the pleading hearing and in the detention cell before he was called for pleading. It would seem impossible for Aronson to have conveyed to Diblin in the detention cell a promise of leniency by the court before the bench conference at which the promise supposedly was made. Nor is there any reference in Aronson's affidavit to a detention cell conversation. Diblin's version of the conversation in the detention cell is a manifest untruth not made any more credible by his reference to the unidentified witness whom he claims overheard the conversation and whose name he has not disclosed.

This case on its facts falls somewhere between United States ex rel. McGrath v. La Vallee, 319 F.2d 308 (2d Cir. 1963), where a hearing was held to have been required, and United States ex rel. Homchak v. People of State of New York, 323 F.2d 449 (2d Cir. 1963), where a hearing was denied, though it is closer to *Homchak* than to *McGrath*.

In *McGrath* the validity of the relator's contention that his guilty plea was induced by a broken promise of a lesser sentence turned on an evaluation of what transpired at a conference in chambers between the relator, his attorney, and the trial judge. The relator's version of what occurred in the judge's chambers was set out in considerable detail in his

---

defendant should be sentenced to a term of from 18 to 20 years. I can say without any hesitation whatsoever that I fully intended the defendant to receive that sentence, and that no promise whatsoever was made to the defendant about receiving a lesser sentence.

"I should like to also say that I have read the affidavit of Murray Sylvester, Esq., the Assistant Attorney General handling this matter, and agree with the statements [sic] contained therein so far as they relate to me."

3. "On or about April 27, 1959 I was an Assistant District Attorney in New York County. I appeared on behalf of the People in the Court of General Sessions on the occasion of the taking of a plea from George Diblin of guilty from the crime of Incest to the first count of an indictment to cover the entire indictment. The presiding Judge was Samuel R. Pierce, Jr.

"I would ordinarily have remembered such a case, but Diblin's case was unusual and I remember it well. A discussion off the record took place before the plea was agreed upon. Parties to the discussion were myself, Judge Pierce, and the attorney for the defendant, Diblin. That discussion concerned itself solely with the plea itself. The question was whether or not the defendant would be allowed to avoid any plea or trial upon the remaining counts of the indictment. There was no bargaining or any discussion with respect to limiting the sentence that might be imposed under that plea. I made no recommendation of sentence in that case. If I mentioned any sentence at all, a matter about which I have no recollection, it must have been to state the statutory limits of punishment upon the single count to which the plea was addressed.

"The plea was made and accepted and I believe that this was an arrangement most generous to the petitioner. My belief and recollection at this point is reinforced by the fact that I remember that I was later vigorously questioned by my superior in the office of the District Attorney for having allowed such a plea in Diblin's case."

own affidavit, and in an affidavit of his trial attorney, and supported his claim of a coerced plea. However, this version was contradicted in material respects by what the state claimed to be transcribed stenographic notes of the conference. The relator challenged the authenticity of this transcript, claiming that no stenographic notes had been taken of the conference which the judge had noted was "off the record;" that even if taken, the notes had not been transcribed until six years later by a transcriber who had not been present; and that this may have been an explanation of why the transcript was inaccurate and incorrect.

The district court found that the transcript and other records offered by the state "conclusively refuted petitioner's contention that he was either threatened, promised or overreached in the matter of his guilty plea," and denied his habeas corpus application without a hearing. However, the Court of Appeals held that it was error to deny the application without a hearing as to the authenticity of the stenographic transcript and remanded for that purpose.[4]

In *Homchak* the relator claimed that his guilty plea had been induced "by the unfulfilled promise of the state trial court and the state prosecutor that his sentence would not exceed 20 years to life imprisonment." The district court denied his application without a hearing. Homchak's petition, however, contained no more than "wholly conclusory allegations" as to the allegedly unfulfilled promise. He failed to submit an affidavit from either of his two assigned trial attorneys and offered no explanation for his failure to do so. Thus, his allegations were wholly unsupported. The Court of Appeals affirmed the denial of the petition without a hearing, stating per curiam:

"While Townsend and other related Supreme Court cases have expanded

the ambit within which an evidentiary hearing must be granted in habeas corpus, these cases in our opinion do not require a hearing where, as here, the petitioner has failed entirely to particularize through the statement of any relevant facts his wholly conclusory claim of constitutional infirmity. As we stated recently in United States ex rel. McGrath v. La Vallee, 319 F.2d 308 (2 Cir., 1963), 'When the petition in support of an application for *habeas corpus* reveals upon its face that it is defective as a matter of law, the habeas court may dismiss the application without a hearing.' " 323 F.2d at 450.

The problem here then is to determine whether, in the light of *McGrath* and *Homchak*, an evidentiary hearing is required in the case at bar. The question is not without its difficulties.

■ The basic principle is set out in Townsend v. Sain, 372 U.S. 293, 312, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963): "Where the facts are in dispute, the federal court in habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of the trial or in a collateral proceeding." But a hearing is not required if the relator's allegations are "vague, conclusory, or palpably incredible," Machibroda v. United States, 368 U.S. 487, 495, 82 S.Ct. 510, 514, 7 L.Ed.2d 473 (1962), or are "patently frivolous or false." Commonwealth of Pennsylvania ex rel. Herman v. Claudy, 350 U.S. 116, 119, 76 S.Ct. 223, 100 L. Ed. 126 (1956); see United States ex. rel. Vaughn v. La Vallee, 318 F.2d 499 (2d Cir. 1963); United States ex rel. Best v. Fay, 239 F.Supp. 632 (S.D.N.Y. 1965).

*Diblin's* allegations in this case, unlike those made in *McGrath*, do not set out in any detail what is alleged to have tran-

---

4. The district court on remand held a hearing and concluded that the stenographic record was accurate. Its order denying McGrath's petition was affirmed by the Court of Appeals. United States ex rel. McGrath v. La Vallee, 348 F.2d 373 (2d Cir. 1965).

spired when the promise was supposed to have been made; are not supported by the affidavit of his attorney, as Diblin claimed they would be; and are specifically refuted by the detailed affidavits of the sentencing judge and the prosecutor. Nor is there anything here, as there was in *McGrath*, which lends semblance of color to a claim that the facts upon which the state relies are not authentic and correct.

■ Like the claims in *Homchak*, Diblin's allegations are vague and conclusory and wholly unsupported by any evidence other than his own statement, circumstantial or otherwise. In the light of this record I find that these allegations are palpably incredible and patently false. No evidentiary hearing is required to determine the merits of these claims and a hearing will not be granted.[5]

In view of what has already been said there is no need for further discussion of the merits. On the record before me I find that Diblin's guilty plea was not induced by a promise of a lesser sentence made by the court or the prosecutor. I further find that no credible evidence has been presented that Diblin's guilty plea was induced by misunderstanding as to the sentence he would receive brought about unwittingly or otherwise by the presiding judge. Petitioner has shown no violation of his federal constitutional rights in connection with his plea or sentence. See United States ex rel. Marinaccio v. Fay, 336 F.2d 272 (2d Cir. 1964); United States v. Horten, 334 F.2d 153 (2d Cir. 1964); United States ex rel. Wissenfeld v. Wilkins, 281 F.2d 707 (2d Cir. 1960).

### III.

Finally, Diblin's remaining contentions fall into two main categories and can be disposed of quite briefly.

■ The various allegations to the effect that Diblin's rights were infringed in some manner in the course of the extradition proceedings in Puerto Rico and his return from there to the custody of the New York State authorities do not aid him on this application. Even assuming that such allegations are true, as the Supreme Court said in Frisbie v. Collins, 342 U.S. 519, 522, 72 S.Ct. 509, 511, 96 L.Ed. 541 (1952), a much more egregious case, "the power of a court to try a person for crime is not impaired by the fact that he had been brought within the court's jurisdiction by reason of a 'forcible abduction.'"

■ Diblin's other allegations as to what occurred while he was in custody in New York, including mistreatment by the police and delay in bringing him to trial, even if established would present no basis for federal relief since "[a] voluntary guilty plea entered on advice of counsel is a waiver of all non-jurisdictional defects in any prior stage of the proceedings against him." United States ex rel. Glenn v. McMann, 349 F.2d 1018, 1019 (2d Cir. 1965), cert. den., 383 U.S. 915, 86 S.Ct. 906, 15 L.Ed.2d 669 (1966); accord, United States ex rel. Martin v. Fay, 352 F.2d 418 (2d Cir. 1965); United States ex rel. Boucher v. Reincke, 341 F.2d 977 (2d Cir. 1965); Ruiz v. United States, 328 F.2d 56 (9th Cir. 1964).

The petition for habeas corpus is in all respects denied.

It is so ordered.

---

5. I do not attempt to equate my holding here with that of the Court of Appeals in People v. Scott, supra. However, there is much to be said for the view that where a petitioner claims that an allegedly broken sentencing promise has been made to his attorney, a corroborating affidavit from the attorney, if he is available, should be required "as a minimum earnest of good faith" before a hearing should be granted.