EVERETT C. HIGBY, APPELLANT, v. SHERIFF OF CLARK COUNTY, NEVADA, RESPONDENT.

No. 6328

November 20, 1970                    476 P.2d 959

*Alfred Becker,* of Las Vegas, for Appellant.

*Harvey Dickerson,* Attorney General, Carson City; *George E. Franklin, Jr.,* District Attorney, and *Richard D. Weisbart,* Deputy District Attorney, Clark County, for Respondent.

**OPINION**

By the Court, MOWBRAY, J.:

This appeal is centered about our interpretation of the mandatory language set forth in subsection 1 of NRS 174.035, which was adopted by the Legislature in 1967. The statute prescribes the procedure that the judges of our State shall follow when accepting a defendant's guilty plea or a plea of *nolo contendere.* It provides as follows:

"1. A defendant may plead not guilty, guilty or, with the consent of the court, nolo contendere. The court may refuse to accept a plea of guilty, and *shall not accept such plea or a plea of nolo contendere without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and consequences of the plea.*" (Emphasis added.)

1. Appellant Everett C. Higby filed a petition for habeas in the district court on April 16, 1970, one month after he had entered a guilty plea (on March 17, 1970) to the charge of conspiracy to commit embezzlement. The predicate for

Higby's habeas application was that the mandates of subsection 1 of NRS 174.035, supra, were not followed by the judge who received his guilty plea and that as a result his guilty plea was not "made voluntarily with understanding of the nature of the charge and consequences of the plea." The colloquy between the judge and Higby that occurred when Higby entered his plea follows:

"MR. HARRINGTON [Assistant District Attorney, Clark County]: Your Honor, we request leave at this time to file an amendment to the information.

"COURT [William P. Compton, District Judge]: Any objection?

"MR. ABBATANGELO [Counsel for defendant Higby]: No objection.

"COURT: It may be filed.

"MR. ABBATANGELO: We waive the reading of the amended information, and we are prepared to enter a plea, Your Honor.

"COURT: Everett C. Higby, what is your plea to the charge contained in the information as amended, guilty or not guilty?

"A [Defendant Higby] Guilty.

"COURT: Very well. Mr. Higby, were you made any promises or inducements to condition you to enter a plea of guilty as to this charge?

"A No.

"COURT: Were you advised as to what the possible penalty is?

"A Yes.

"COURT: What did they tell you?

"A Pay back the money.

"COURT: The penalty I said.

"A Oh, one year.

"COURT: No one threatened you? In other words we can say it was strictly voluntary on your part?

"A Yes, sir.

"COURT: You knowing what the penalty could be?

"A Yes.

"COURT: Did anyone tell you as to what the judge might do?

"A No.

"COURT: Very well, the plea will be entered."

The judge ordered a presentence investigation report, and after he had received it he sentenced Higby on April 10, 1970,

to 6 months' confinement and a fine of $2,500.[1]  Thereafter,
on April 16, Higby filed this petition for habeas, which was
heard before another judge and denied. Hence, this appeal.
We reverse, and we remand the case to the district court with
instructions that Higby be permitted to plead anew to the
charge in the manner prescribed by the statute.

2. Subsection 1 of NRS 174.035, supra, is identical with
the first two sentences of Rule 11 of the Federal Rules of
Criminal Procedure. 18 U.S.C.A. That Rule provides:

"A defendant may plead not guilty, guilty or, with the con-
sent of the court, *nolo contendere*. The court may refuse to
accept a plea of guilty, and shall not accept such plea or a
plea of *nolo contendere* without first addressing the defendant
personally and determining that the plea is made voluntarily
with understanding of the nature of the charge and the conse-
quences of the plea. . . . "

And that Rule has been recently interpreted by the Supreme
Court of the United States to mean that, before a judge may
accept a guilty plea, he must canvass with the defendant and
the record must show, and the judge must be satisfied, that
(1) the plea is voluntary, i.e., no coercion or duress; (2) the
defendant knows the nature of the charge; and (3) the
defendant knows the consequences of the guilty plea. McCar-
thy v. United States, 394 U.S. 459 (1969). In that case,
McCarthy had entered a guilty plea to a tax evasion charge.
The judge asked him whether he desired to plead guilty;
whether he understood that a guilty plea subjected him to
imprisonment up to 5 years and a maximum fine of $10,000;
whether he understood that in entering a guilty plea he waived
his right to a jury trial; and, finally, whether he had been
induced by any threats or promises to enter the guilty plea.
The colloquy between the judge and McCarthy, 394 U.S. at
472, is set forth in the margin.[2]

After the judge imposed sentence of 1 year's confinement

---

[1] There was no mention of a possible fine when the judge received
Higby's plea on March 17.

[2] "MR. SOKOL [petitioner's counsel]:  . . . If the Court please, I have
advised Mr. McCarthy of the consequences of a plea. At this time,
in his behalf I would like to withdraw the plea of not guilty hereto-
fore entered to Count 2, and enter a plea of guilty to Count 2. There
are three Counts.

"THE COURT: Is that satisfactory to the government?

"MR. HUGHES [Government counsel]: Satisfactory to the govern-
ment, your Honor. The government will move to dismiss Counts
1 and 3.

in jail and a $2,500 fine, McCarthy's counsel moved to suspend the sentence. The motion was denied. McCarthy then appealed to the United States Court of Appeals and argued that his plea should be set aside because it had been accepted in violation of Rule 11 of the Federal Rules of Criminal Procedure. Specifically, McCarthy contended (1) that the district court had accepted his plea "without first addressing

---

"THE COURT: There will be a disposition in regard to the other Count?

"MR. SOKOL: He has just moved to dismiss Counts 1 and 3.

"THE COURT: Not until the plea is accepted and there is a judgment thereon.

"MR. HUGHES: Correct.

"THE COURT: This is tax evasion, five and ten?

"MR. HUGHES: Yes, your Honor, a maximum penalty of five years and $10,000.

"THE COURT: Mr. McCarthy, your lawyer tells me that you want to enter a plea of guilty to this second Count of this indictment; is that true?

"DEFENDANT McCARTHY: Yes, your Honor.

"THE COURT: You understand on your plea of guilty to the second Count of this indictment, you are waiving your right to a jury trial?

"DEFENDANT McCARTHY: Yes, your Honor.

"THE COURT: You understand on your plea of guilty you may be incarcerated for a term not to exceed five years?

"DEFENDANT McCARTHY: Yes, your Honor.

"THE COURT: You understand you may be fined in an amount not in excess of $10,000?

"DEFENDANT McCARTHY: Yes, your Honor.

"THE COURT: Knowing all that, you still persist in your plea of guilty?

"DEFENDANT McCARTHY: Yes, your Honor.

"THE COURT: The record will show that this defendant, after being advised of the consequences of his plea to Count 2 of this indictment, persists in his plea. The plea will be accepted. There will be a finding of guilty in the manner and form as charged in Count 2 of this indictment, judgment on that finding.

"Now, in regard to Counts 1 and 3?

"MR. HUGHES: Your Honor, the government will move to dismiss them. I would also request the Court to ask whether or not any promises or threats have been made.

"MR. SOKOL: No, no promises or threats.

"THE COURT: I am going to ask the defendant himself. Have any promises been made to you for entering a plea of guilty?

"DEFENDANT McCARTHY: No, your Honor.

"THE COURT: Has anybody threatened you that if you didn't enter a plea of guilty something would happen to you?

"DEFENDANT McCARTHY: I beg your pardon?

"THE COURT: Has anybody threatened you to enter a plea of guilty?

"DEFENDANT McCARTHY: That's right, of my own volition, your Honor.

"THE COURT: All right. . . ."

[him] . . . personally and determining that the plea [was] . . . made voluntarily with understanding of the nature of the charge . . . ," and (2) that the court had entered judgment without determining "that there [was] . . . a factual basis for the plea." 394 U.S. at 462. The Court of Appeals affirmed McCarthy's conviction and held that the district judge had complied with Rule 11.

The Supreme Court of the United States granted certiorari and reversed McCarthy's conviction, on the ground that the district judge had not complied with Rule 11. In an opinion authored by Mr. Chief Justice Warren, in which all members of the Court concurred (Mr. Justice Black concurring in a separate opinion), the Court had this to say regarding the application of Rule 11 to guilty pleas (394 U.S. at 464):

"Rule 11 expressly directs the district judge to inquire whether a defendant who pleads guilty understands the nature of the charge against him and whether he is aware of the consequences of his plea. At oral argument, however, counsel for the Government repeatedly conceded that the judge did not personally inquire whether petitioner understood the nature of the charge. At one point, counsel stated quite explicitly: 'The subject on which he [the District Judge] did not directly address the defendant, which is raised here, is the question of the defendant's understanding of the charges.' Nevertheless, the Government argues that since petitioner stated his desire to plead guilty, and since he was informed of the consequences of his plea, the District Court 'could properly *assume* that petitioner was entering the plea with a complete understanding of the charge against him.' (Emphasis added.)

"We cannot accept this argument, which completely ignores the two purposes of Rule 11 and the reasons for its recent amendment. First, although the procedure embodied in Rule 11 has not been held to be constitutionally mandated, it is designed to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary. Second, the Rule is intended to produce a complete record at the time the plea is entered of the factors relevant to this voluntariness determination. Thus, the more meticulously the Rule is adhered to, the more it tends to discourage, or at least to enable more expeditious disposition of, the numerous and often frivolous post-conviction attacks on the constitutional validity of guilty pleas." (Footnotes omitted.)

The Court concluded (394 U.S. at 472):

". . . Our holding that a defendant whose plea has been

accepted in violation of Rule 11 should be afforded the opportunity to plead anew not only will insure that every accused is afforded those procedural safeguards, but also will help reduce the great waste of judicial resources required to process the frivolous attacks on guilty plea convictions that are encouraged, and are more difficult to dispose of, when the original record is inadequate."

It is true that the High Court, in McCarthy, declared that its opinion rested solely on the Court's supervisory power over the lower federal courts and that the Court did not decide the case on constitutional grounds[3].

3.    However, 2 months later, on June 2, 1969, in Boykin v. Alabama, 395 U.S. 238 (1969), the High Court did declare that guilty plea taking in state courts involved federal constitutional rights. The Court said, 395 U.S. at 243:

"Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth. *Malloy* v. *Hogan,* 378 U.S. 1 [1964]. Second, is the right to trial by jury. *Duncan* v. *Louisiana,* 391 U.S. 145 [1968]. Third, is the right to confront one's accusers. *Pointer* v. *Texas,* 380 U.S. 400 [1965]. We cannot presume a waiver of these three important federal rights from a silent record.

"What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he *has a full understanding of what the plea connotes and of its consequence.* When the judge discharges that function, he leaves a record adequate for any review that may be later sought (*Garner* v. *Louisiana,* 368 U.S. 157, 173 [1961]; *Specht* v. *Patterson,* 386 U.S. 605, 610 [1967]), and forestalls the spin-off of collateral proceedings that seek to probe murky memories." (Footnotes omitted; emphasis added.)[4] Cf. United States ex rel. Ward v. Deegan, 310 F.Supp. 1076,

---

[3]In McCarthy, supra, 394 U.S. at 464:

". . . This decision is based solely upon our construction of Rule 11 and is made pursuant to our supervisory power over the lower federal courts; we do not reach any of the constitutional arguments petitioner urges as additional grounds for reversal."

[4]Mr. Justice Harlan, joined by Mr. Justice Black, wrote in his dissent, 395 U.S. at 245:

". . . The Court thus in effect fastens upon the States, as a matter of federal constitutional law, the rigid prophylactic requirements of Rule 11 of the Federal Rules of Criminal Procedure."

1078 (S.D.N.Y. 1970), and Brady v. United States, 397 U.S. 742, 747–748 (1970).

Concededly, it is difficult to prescribe a precise procedure or set of questions to be asked at every guilty plea hearing. It necessarily must vary from case to case. We agree, however, that certain minimal requirements may be specified. The record should affirmatively show:

1. The defendant knowingly and understandingly waived (a) the privilege against self-incrimination, (b) the right to trial by jury, and (c) the right to confront his accusers. In reference to these rights and privileges, it was stated in United States ex rel. Ward v. Deegan, supra, 310 F.Supp. at 1078: ". . . [I]t is clearly the duty of a *state* court judge taking a guilty plea to canvass with a defendant *at least* those consequences of his plea so that the voluntariness of the plea will be established on the record." (Emphasis added.)

2. The plea was voluntary, was not coerced, and was not the result of a promise of leniency.

3. The defendant understands the consequences of his plea. The judge should inform the defendant of the *range of punishments* that may be imposed and then ask whether it is his intention to plead guilty.

4. The defendant understands the nature of the charge itself, i.e., the "elements" of the crime to which he is pleading guilty.

We conclude that the judge, in accepting Higby's plea to the charge of conspiracy to commit embezzlement, failed "in canvassing the matter with the accused [Higby] to make sure he ha[d] a full understanding of what the plea connote[d] and of its consequence," as required by Boykin, supra, 395 U.S. at 244. We therefore reverse the order denying habeas, and we remand the case to the district court to permit Higby to plead anew to the charge. Higby's plea was received on March 17, 1970, *after* Boykin was decided by the Supreme Court. We have held that Boykin is not to receive retroactive application. See Anushevitz v. Warden, 86 Nev. 191, 467 P.2d 115 (1970), and Stocks v. Warden, 86 Nev. 758, 476 P.2d 469 (1970). However, we do take this opportunity to direct the attention of the district judges to the provisions of subsection 1 of NRS 174.035, and we urge that when they receive a guilty plea the minimal requirements as specified, supra, be followed to reduce, as the Court said in McCarthy,

394 U.S. at 472, "the great waste of judicial resources required to process the frivolous attacks on guilty plea convictions that are encouraged, and are more difficult to dispose of, when the original record is inadequate."

Reversed and remanded.

COLLINS, C. J., ZENOFF, BATJER, and THOMPSON, JJ., concur.