ROBERT K. SCHOULTZ, APPELLANT, v. WARDEN, NEVADA STATE PRISON, RESPONDENT.

No. 6527

March 1, 1972                                   494 P.2d 274

*H. Dale Murphy,* Washoe County Public Defender, of Reno, for Appellant.

*Robert List,* Attorney General, of Carson City; *Robert E. Rose,* District Attorney, and *Kathleen M. Wall,* Deputy District Attorney, Washoe County, for Respondent.

## OPINION

By the Court, GUNDERSON, J.:

Appealing from an order that dismissed his petition for post-conviction relief without an evidentiary hearing, appellant asks relief from the 10-year sentence he is serving because:

(1) the sentencing judge "accepted Appellant's plea in violation of N. R. S. 174.035";[1]

---

[1]Patterned on Fed.R.Crim.P. 11, NRS 174.035(1) provides, inter alia: "A defendant may plead not guilty, guilty or, with the consent of the court, nolo contendere. The court may refuse to accept a plea of guilty, and shall not accept such plea or a plea of nolo contendere without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and consequences of the plea." Our statute does not contain language of the 1966 amendment to Fed.R.Crim.P. 11, to which the U.S. Supreme Court specifically referred in deciding McCarthy v. United States, 394 U.S. 459 (1969). See 394 U.S., at 462, n. 4.

(2) his counsel was "derelict in not advising Appellant of the nature and consequences of his plea," and in not advising the court of appellant's "mental deficiency";

(3) the State coerced his plea; and

(4) the "Court erred in issuing an Order dismissing Appellant's petition one day after the State's Motion to Dismiss, in violation of N. R. S. 177.355."[2]

1. Appellant apparently realizes that the constitutional doctrine of Boykin v. Alabama, 395 U.S. 238 (1969), which we applied in Higby v. Sheriff, 86 Nev. 774, 476 P.2d 959 (1970), has no application to appellant, who pleaded guilty and was sentenced before *Boykin* was decided. Stocks v. Warden, 86 Nev. 758, 476 P.2d 469 (1970); Mathis v. Warden, 86 Nev. 439, 471 P.2d 233 (1970); Anushevitz v. Warden, 86 Nev. 191, 467 P.2d 115 (1970). Still, appellant urges that NRS 174.035(1), enacted before appellant's plea, should be construed to impose similar obligations on Nevada courts, as Fed.R.Crim.P. 11 was construed to do in the case of federal courts. McCarthy v. United States, 394 U.S. 459 (1969). In Stocks v. Warden, cited above, we heretofore rejected this contention, deciding "we are free to place our own construction upon the meaning to be given our statute." 86 Nev., at 762; 476 P.2d, at 471.

As appellant states his grievance, he "contends that he had a right to know exactly the penalty that could be imposed before entry of plea and that due to the failure of counsel and the court to so inform Appellant, the plea was therefore involuntary, uninformed and void." However, the record shows appellant's counsel quite clearly and correctly told appellant in open court that the penalty for robbery is "between 1 and 15" years. See: NRS 200.380(2). In our view, the sentencing judge's inquiry satisfied NRS 174.035(1).[3]

---

[2]That section of our post-conviction relief act provides, inter alia: "Within 30 days after the docketing of the petition, or within any further time the court may fix, the state shall respond by motion or answer. . . ."

[3]Before accepting appellant's guilty plea, the court interrogated him and his counsel as follows:

"THE COURT: Mr. Schoultz, to the amended information which charges you with having committed a felony: to wit, robbery, what is your plea? THE DEFENDANT: Guilty. THE COURT: Guilty? THE DEFENDANT: Yes, sir, guilty, your Honor. THE COURT: Have you been talking with Mr. Ferguson, Mr. Schoultz, about this case? THE DEFENDANT: Just what my rights were, sir. THE COURT: Did he

▮▮▮▮▮

2.   Aside from his unfounded assertion that he was not told what penalty the court could impose, appellant's contention that he was denied effective assistance of counsel rests on the claim counsel "knew of the mental deficiency of his client, yet failed to so inform the court." Regarding this, appellant cites Evans v. Kropp, 254 F.Supp. 218 (E.D.Mich., S.D. 1966), in which counsel pleaded his client guilty of murder without revealing his client had been determined psychotic and unfit to stand trial by the Chief of Psychiatry of the Detroit General Hospital. In the *Evans* case, the court held "[t]he failure on the part of the prosecutor or petitioner's counsel to disclose to the court this extremely critical information prevented the court from making an adequate determination of petitioner's competency to offer a guilty plea." Id., at 220. In the instant case, appellant does not contend he was psychotic or unfit to stand trial, but merely that he is "mentally slow" and "underwent extensive psychotherapy treatments" while previously imprisoned in California. As this information concerning appellant's past does not appear "critical" to the sentencing court's function under NRS 174.-035(1), we reject the contention that his counsel was incompetent in failing to reveal it.[4]

---

advise you of your Constitutional rights? THE DEFENDANT: Yes, sir. THE COURT: Have you been in trouble before? THE DEFENDANT: Yes, sir. THE COURT: Did we have any kind of an examination made of the defendant here? MR. FREITAG: None yet, your Honor. THE COURT: Mr. Ferguson, have you talked with him about the effect of a plea of guilty in a case of this kind? MR. FERGUSON: Yes, I have, your Honor. I have informed him of his rights and the effect of a plea of guilty. THE COURT: Have you told him what the plea—I mean, what the felony would be? MR. FERGUSON: Yes, I have, your Honor. THE COURT: Do you understand that the sentencing is entirely up to me, and I can give you whatever sentence that I think is proper. What is it, between 1 and 15? MR. FERGUSON: 1 to 15. MR. FREITAG: That's correct. THE COURT: Do you understand that, even if you ask for probation, I may or may not grant it, depending upon the results of the report? Do you understand that? THE DEFENDANT: Yes, sir. THE COURT: How far did you go in school? THE DEFENDANT: I got my high school diploma. THE COURT: Where was that? THE DEFENDANT: In D. V. I. THE COURT: Where? THE DEFENDANT: Dore Vocational Institution, in Tracy, California. THE COURT: Well, all right. I will accept your plea of guilty, but I think I will refer this to the probation officer."

[4]We do not know whether the sentencing court considered records of petitioner's California confinement. However, they establish that if petitioner told his counsel of his supposed mental deficiency, investigation would have established his claims to be groundless. Particularly, they show he finished high school while confined, holds an aircraft mechanic's license, and participated but two months in group therapy

3. Appellant's contention that the State "coerced" his plea seems partially grounded on the theory that, by the Information first filed against appellant, the prosecutor "threatened" prosecution under Nevada's habitual criminal act. NRS 207.010. Of course, a guilty plea is not "coerced" merely because motivated by desire to avoid the possibility of a higher penalty, Brady v. United States, 397 U.S. 742 (1970); and in Stocks v. Warden, supra, we applied this principle to a plea entered to avoid prosecution as an habitual criminal.[5]

Appellant's contention that his plea was "coerced" also seems partially based on the claim that "[w]hen negotiations began, counsel advised Appellant the Habitual Criminal charge would be dismissed and he would be given a term of from five to seven years if he would plead guilty." The record seems to negate any plausible assertion that such advice induced appellant's plea; thus, we believe, the district court properly dismissed appellant's petition without conducting an evidentiary hearing on the issue. Cf. United States v. Follette, 268 F.Supp. 674 (S.D.N.Y. 1967).

4. We reject as frivolous appellant's fourth contention, to wit: that because the State's motion to dismiss his petition was late, the order dismissing his petition "must be declared a nullity."

Affirmed.

ZENOFF, C. J., and BATJER, MOWBRAY, and THOMPSON, JJ., concur.

---

while remaining in the general prison population. His psychiatric evaluation recited he "does not show evidence of organicity and is not psychotic."

[5]Brady v. United States does intimate coercion may occur if the defendant's will is overborne by threats of, or promises to discontinue, improper harassment (397 U.S., at 755, and 751, n. 8); and appellant does suggest the habitual criminal charge against him was unfounded because one of his prior convictions, which the State alleged as a felony, was merely a misdemeanor since he was sentenced to custody of the California Youth Authority rather than to prison. However, if appellant contends this possible error in pleading constituted prosecutorial harassment of such magnitude as to coerce his plea, we reject the claim as frivolous. Assuming the habitual criminal charge could have been successfully challenged as appellant claims, we cannot perceive how the State's insistence on litigating the issue, if the case was to be tried, could constitute improper "coercion."