STATE OF NEBRASKA, APPELLEE, v. JESSEE TRAVIS ROUSE, APPELLANT.

293 N. W. 2d 83

Filed June 3, 1980. No. 43014.

Jessee Travis Rouse, pro se.

Paul L. Douglas, Attorney General, and Mel Kammerlohr, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, MCCOWN, BRODKEY, WHITE, and HASTINGS, JJ., and COLWELL, District Judge.

HASTINGS, J.

Defendant has submitted a brief pro se appealing from an order of the District Court for Garden County, Nebraska, denying his motion for post conviction relief. We affirm.

On December 11, 1972, while represented by counsel, defendant pleaded guilty to an amended information charging him with second degree murder. The District Court accepted the defendant's plea and sentenced him to imprisonment in the Nebraska Penal and Correctional Complex for a term of not less than 16 nor more than 20 years. Although failing to specifically assign any errors in his brief, defendant does argue  (1) That his rights to due process and equal protection were violated when the trial court accepted his plea of guilty and entered judgment thereon without advising the defendant of the statutory minimum and maximum penalties for second degree murder, and  (2) That the provisions of Neb. Rev. Stat. § 83-1,105 (Cum. Supp. 1972) as to indeterminate sentencing did not apply to a sentence for second degree murder under the provisions of

Neb. Rev. Stat. § 28-402 (Reissue 1975).

The plea of guilty to the second degree murder charge was the result of a plea bargain arrangement between defendant's counsel and the county attorney of Garden County. Defendant had originally been charged with six felony counts: first degree murder, felony murder, three counts of burglary, and one count of escape. The charges were the result of a series of incidents which occurred on April 8, 1971, in Oshkosh, Nebraska, when three establishments were burglarized and a police officer, Richard Vandermate, was shot and killed. The defendant had originally pleaded not guilty and not guilty by reason of insanity to all six charges.

During the arraignment proceedings on the amended information, Judge Kuns, the trial judge, questioned the defendant about his understanding of the consequences of a guilty plea and the voluntariness of the same. The defendant answered that he understood that, in return for the guilty plea he would enter to the second degree murder charge, the State would drop all the other charges, including that of first degree murder. He also said that he understood that, while he was in custody pending trial, the death penalty for first degree murder had been declared unconstitutional. The following colloquy then took place between the court and the defendant:

Q. And that as a part of the arrangement, that each side would ask the Court to fix the eventual sentence at a certain limit?

A. It is.

Q. And was it your understanding that the agreements made between your attorneys and the prosecuting attorneys were not binding on the Court and that the Court did not participate in the conferences?

A. Yes, sir.

Q. But that the Court would consider the

recommendations?

A. Yes, sir.

Two letters exchanged between prosecution and defense counsels with regard to the plea agreement were made a part of the record. Judge Kuns asked the defendant whether he had seen the letters before and the defendant replied that he had seen copies of them.

THE COURT: I see. And they reflect correctly the matters which your attorneys have discussed with you before this hearing was held?

THE DEFENDANT: Yes, sir.

THE COURT: And you approve of the statements and arrangements that they have made on your behalf?

THE DEFENDANT: Yes, sir.

The letters outline the arrangement and state that the prosecution would not ask the court for a sentence of more than 20 years and would not oppose a sentence as low as 16 years upon recommendation of defense counsel.

The court took great care to ask the defendant whether he was aware that, by pleading guilty, he was giving up the right to a jury trial and the right of confrontation, and to assure that he understood the burden of proof that would have to be met by the prosecution in a jury trial. The court questioned the defendant about his education and learned he had $11\frac{1}{2}$ years of schooling, that he could read and write, and that at one time he was a representative of Garden County at a national conference on crime and delinquency. An adequate factual basis supporting the plea of guilty was also established.

The defendant's first assignment of error is that the court did not inform him of the statutory minimum and maximum sentences for second degree murder, which are 10 years and life. The defendant relies on *State v. Turner,* 186 Neb. 424, 183 N.W.2d

763 (1971), in which we adopted the ABA Standards Relating to Pleas of Guilty (1968 Approved Draft) as the minimum procedure in the taking of such pleas. He argues that, unless the court has informed the defendant of the statutory penalty, the defendant could not have made a voluntary and intelligent decision to plead guilty to the charge.

Reliance is also placed on *State v. Curnyn,* 202 Neb. 135, 140, 274 N.W.2d 157, 161 (1979), in which we stated: "It is difficult to conceive how a guilty plea can be voluntary and intelligent unless and until the defendant is informed or is made aware of the possible penalties to which he may be subjected by making such a plea."

It should be noted that the constitutional requirement is that the plea be voluntary and intelligent and that the determination of that fact be reliably established. *State v. Lewis,* 192 Neb. 518, 222 N.W.2d 815 (1974). The criterion is whether or not the defendant understands the relevant factors involved in pleading guilty. We have stated that, before accepting such a plea, the judge is expected to sufficiently examine the defendant to determine whether he understands the nature of the charge, the *possible penalty,* and the *effect of his plea. State v. Turner, supra.*

> The standards recommend that a defendant be allowed to withdraw his plea of guilty or nolo contendere upon timely motion if he proves that withdrawal is necessary to correct a manifest injustice. . . . In the absence of proof by the defendant of such manifest injustice, the defendant should not be permitted to withdraw her plea.

*State v. Lewis* at 522, 222 N.W.2d at 818.

The standards we recommend for trial judges to follow before accepting a guilty plea are not per se rules, with which the failure to technically comply would mandate an automatic reversal. If it can be

determined that the defendant understood the nature of the charge, the possible penalty, and the effect of his plea, then there is no manifest injustice that would require that the defendant be permitted to withdraw his plea. By so holding, we follow the lead of the U.S. Supreme Court. In *Boykin v. Alabama,* 395 U.S. 238 (1969), the court held it was plain error for the trial judge to accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary.

> What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence.

*Id.* at 243-44.

The voluntariness of a plea can be determined only by considering all the relevant circumstances surrounding it.

> The standard as to the voluntariness of guilty pleas must be essentially that defined by Judge Tuttle of the Court of Appeals for the Fifth Circuit:
>
> " '[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).' 242 F.2d at page 115."

*Brady v. United States,* 397 U.S. 742, 755 (1970).

The U.S. Supreme Court more recently had the opportunity to rule upon the issue of whether a convic-

tion based on a guilty plea is subject to collateral attack whenever it can be shown that F. R. Crim. P. 11 was violated when the plea was accepted. *United States v. Timmreck,* 441 U.S. 780 (1979). Rule 11 provides, in pertinent part:

Advice to Defendant. Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform him of, and determine that he understands, the following:

(1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law.

In *Timmreck,* the defendant, acting on advice of counsel, pleaded guilty. When the judge addressed the defendant, he explained that the defendant could receive a sentence of 15 years imprisonment and a $25,000 fine, but the judge failed to describe the mandatory special parole term of at least 3 years required by the applicable statute. The judge accepted the guilty plea and sentenced the defendant to 10 years imprisonment plus a special parole of 5 years and a fine of $5,000. Other charges against the defendant were dismissed pursuant to the plea bargain with the prosecutor. The defendant neither objected to the sentence nor appealed from the conviction.

Two years later, the defendant brought a habeas corpus action to vacate the sentence on the ground that the trial judge had violated Rule 11 by accepting the plea without informing the defendant of the mandatory special parole term. After a hearing, the U.S. District Court denied the motion to vacate, recognizing that a violation of Rule 11 had occurred but concluding that the defendant had not been prejudiced since he had received a sentence within the maximum described to him at the time the guilty plea was accepted. *Timmreck v. United States,* 423

F. Supp. 537 (E.D. Mich. 1976).

The Court of Appeals reversed, holding that a violation of Rule 11 will support a collateral attack on a conviction based on a guilty plea even when there is neither constitutional error nor any showing of special prejudice to the defendant. *Timmreck v. United States,* 577 F.2d 372 (6th Cir. 1978). The U.S. Supreme Court reversed the Court of Appeals, following its reasoning in *Hill v. United States,* 368 U.S. 424 (1962), that this was not a fundamental defect which resulted in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure.

> Respondent does not argue that he was actually unaware of the special parole term or that, if he had been properly advised by the trial judge, he would not have pleaded guilty. His only claim is of a technical violation of the rule.

*United States v. Timmreck, supra* at 784.

The application of a per se rule for technical errors was also rejected in *Keel v. United States,* 585 F.2d 110 (5th Cir. 1978). Keel was originally indicted for attempted bank robbery and for jeopardizing the life of a bank employee with the use of a dangerous weapon and initially pleaded not guilty. On the day set for trial, counsel informed the judge that a plea bargain arrangement had been reached, whereby the prosecutor would recommend a 12-year sentence on a plea of guilty and would not oppose a 10-year sentence. The court accepted the plea and imposed the recommended 12-year sentence. During the Rule 11 hearing, the judge inadvertently informed the defendant that the maximum sentence which could be imposed upon conviction was 45 years imprisonment rather than 25 years. No appeal was taken and, just over a year later, the defendant brought a habeas corpus action to set aside the sentence. The Fifth Circuit Court of Appeals re-

jected a per se rule requiring literal compliance with the language of the rule for the taking of a valid guilty plea.

> Regardless of what principle of law is applied in direct appeals, we hold that when a collateral attack is made on a guilty plea for failure of the district court to literally comply with new Rule 11, the defendant must show prejudice in order to qualify for [28 U.S.C.] § 2255 [1976] relief. In the absence of a fundamental defect which inherently results in the miscarriage of justice, or an omission inconsistent with the demands of fair procedure, relief cannot be given in a collateral attack on a guilty plea conviction based on failure of Rule 11 compliance when the plea was taken.

*Keel* at 113.

In the instant case, the defendant alleges in his motion for post conviction relief that he was never advised or informed by the court of the statutory maximum and minimum penalties for second degree murder and that he did not know what those penalties were. The defendant does not allege that, if he had been so informed by the trial court, he would not have pleaded guilty. The allegation is of a technical failure of the trial court to comply with the minimum standards that we have adopted for the acceptance of guilty pleas. The defendant must allege and prove that such an omission has resulted in prejudice to him, constituting manifest injustice that would require this court to give him the opportunity to withdraw the plea. As we stated in *State v. Clingerman,* 180 Neb. 344, 351, 142 N.W.2d 765, 770 (1966), the post conviction act, Neb. Rev. Stat. §§ 29-3001 to 3004 (Reissue 1975), was

> intended to provide relief in those cases where a miscarriage of justice may have occurred, and not to be a procedure to secure

a routine review for any defendant dissatisfied with his sentence. To hold otherwise will be to permit defendants to misuse and abuse a remedy intended to provide relief for those exceptional cases where the rights of a defendant have been ignored or abused.

The defendant, Rouse, engaged in a plea bargain arrangement with the prosecutor as a result of which he was arraigned on one felony rather than six. The U.S. Supreme Court has recognized the advantages of plea arrangements, both to defendants and to the prosecution. For example, in *Brady v. United States, supra* at 752, the court said:

It is this mutuality of advantage that perhaps explains that well over three-fourths of the criminal convictions in this country rest on pleas of guilty, a great many of them no doubt motivated at least in part by the hope or assurance of a lesser penalty than might be imposed if there were a guilty verdict after a trial to a judge or jury.

The defendant was well aware of the arrangements made between his counsel and the prosecution for a plea of guilty in exchange for dropping six felony charges and substituting a second degree murder charge. Included in the letter from the defendant's attorney to the county attorney was the following language: "Judge Kuns informed me that if there was any misunderstanding or disagreement as to acceptance of the plea on the basis that we had agreed upon, that he would permit us to withdraw the plea of guilty and reinstate the plea of not guilty." The defendant had read and approved this arrangement. He knew that his sentence would be between 16 and 20 years or he would have the opportunity to withdraw the guilty plea and reinstate the plea of not guilty. In this situation, the defendant was fully aware of the probable penalty and the consequences of his plea. In fact, the defendant got the

sentence he had bargained for. Any error on the part of the trial judge in failing to inform the defendant of the statutory penalty did not prejudice the rights of the defendant or result in manifest injustice. Without more, the technical failure of the trial judge to inform the defendant of the statutory penalties is not enough for reversal.

The second assignment of error urges the point that the trial court imposed an indeterminate sentence for second degree murder rather than a sentence for a definite term of years not less than 10, or for a term of life, contrary to our holding in *State v. Laravie,* 192 Neb. 625, 223 N.W.2d 435 (1974). The defendant raises this error for the first time on appeal from the denial of his motion for post conviction relief. The defendant did not file a direct appeal from his conviction in the District Court. A motion to vacate a judgment and sentence under the post conviction act cannot be used as a substitute for an appeal or to secure a review of issues already litigated. Where the facts and issues which are the grounds of a motion for post conviction relief were known to the defendant and his counsel and were not raised in direct appeal, those issues will not ordinarily be considered in a post conviction review. *State v. Suggett,* 200 Neb. 693, 264 N.W.2d 876 (1978). Relief under the post conviction act is limited to cases in which there was a denial or infringement of a prisoner's rights such as to render the judgment void or voidable under the Constitution of Nebraska or of the United States. *State v. Miles,* 194 Neb. 128, 230 N.W.2d 227 (1975). An indeterminate sentence imposed for a crime, where not authorized by statute, is erroneous but not void. *Draper v. Sigler,* 177 Neb. 726, 131 N.W.2d 131 (1964). A sentence of not less than 16 years nor more than 20 years made under the provisions of the indeterminate sentence law of this state is a definite sentence for 20 years. *Studley v. Studley,* 129 Neb. 784, 263 N.W. 139 (1935).

Such sentence was at most erroneous, but not void, and was a valid sentence for 20 years. By failing to challenge the indeterminateness of the sentence directly in an appeal, the defendant waived the right to contest it in a post conviction review. *State v. Oziah,* 198 Neb. 423, 253 N.W.2d 48 (1977).

The judgment of the District Court in denying post conviction relief was correct and is affirmed.

AFFIRMED.

WHITE, J., dissenting.

In *State v. Turner,* 186 Neb. 424, 183 N.W.2d 763 (1971), we said that the procedure in a guilty plea must, *at a minimum,* conform to the procedures contained in the ABA Standards Relating to Pleas of Guilty (1968 Approved Draft). We imposed the new standards for taking guilty pleas in order to conform our plea-taking procedures to those required by *Boykin v. Alabama,* 395 U.S. 238 (1969).

The majority cites *State v. Lewis,* 192 Neb. 518, 222 N.W.2d 815 (1974), for the proposition that the plea must be voluntary and intelligent. *Lewis* goes further. Even when there is an implication in the record that the defendant, in fact, knew the consequences of her plea, the judge is still required to advise the defendant of possible penalties.

> The standards recommend that a defendant be allowed to withdraw his plea of guilty or nolo contendere upon timely motion if he proves that withdrawal is necessary to correct a manifest injustice. American Bar Association Standards Relating to Pleas of Guilty, § 2.1. The standards provide that one of the items which may constitute manifest injustice is a failure to be advised of penal consequences of a plea.

*Lewis* at 522, 222 N.W.2d at 818. In *Lewis,* we found that there was not substantial compliance with ABA Standards Relating to Pleas of Guilty § 1.4(c) because of the failure of the court to advise the defend-

ant of the penalties before accepting her plea.

The constitutional requirement for the procedure in a guilty plea is that the plea be voluntary and intelligent and the determination of the fact be readily determined. *Boykin v. Alabama, supra; State v. Turner, supra.* In *State v. Curnyn,* 202 Neb. 135, 274 N.W.2d 157 (1979), we considered whether the conviction and sentence of the defendant must be vacated and set aside because of the failure of the court, during arraignment, to inform the defendant of the range of penalties for the offense of burglary. Quoting *Lewis,* we stated:

> The practice of advising a defendant who is about to enter a plea to a felony of the possible penalties on conviction, although not made mandatory by any statute in this state, is one of long standing in this jurisdiction and antedates the adoption of the standards in State v. Turner, *supra.*

*Curnyn* at 139, 274 N.W.2d at 160.

> [Where] the extent of the defendant's knowledge of the applicable penalties is a matter in dispute and cannot be clearly determined from the record of this case without indulging in inferences, we deem it advisable, without vacating and setting aside defendant's conviction and sentence, to remand this matter to the trial court with leave to the defendant to apply to the trial court to withdraw his plea.

*Curnyn* at 140, 274 N.W.2d at 161.

In *State v. Svoboda,* 199 Neb. 452, 455, 259 N.W.2d 609, 611 (1977), we considered whether the defendant's guilty pleas were involuntary because of the trial court's participation in plea bargaining discussions. Remanding the case for further proceedings, we said: "The Post Conviction Act provides that unless the motions and files and records of the case show that the prisoner is entitled to no relief, the

court shall grant a prompt hearing." We held that since the files and records of the case did not affirmatively establish that the defendant was entitled to no relief, the District Court should have granted an evidentiary hearing.

The instant case should be governed by the principles set out in *Lewis, supra, Curnyn, supra,* and *Svoboda, supra.* The majority opinion does not comply with these standards. Because of the failure to affirmatively show the knowledge of minimum and maximum penalty, the record fails to establish that the defendant entered his plea understandingly and voluntarily and it also fails to affirmatively establish that the defendant's allegations do not entitle him to relief. See, also, *State v. Flye,* 201 Neb. 115, 266 N.W.2d 237 (1978); *State v. Ford,* 198 Neb. 376, 252 N.W. 2d 643 (1977).

The majority opinion attempts to diminish the requirement that the judge advise the defendant of the maximum possible penalty. This approach is not supported by the ABA Standards nor the advisory rules for trial judges. In the comment to § 1.4(c)(i) and (ii) of the ABA Standards, the drafters state: "The emphasis in the case law has been upon the requirement that the judge inform the defendant of the maximum possible punishment. This is understandable, as it is ignorance of the maximum which is most likely to serve as a basis for withdrawal of the plea." The Nebraska Bench Book XVIII-9 (1976) provides that the judge should ask the defendant to state on the record the penalty for the offense. "[This is the] bare minimum to meet the American Bar Association's and Nebraska Supreme Court's requirements."

There is nearly universal agreement that the defendant must know the minimum and maximum sentence a judge may impose. Bond, Plea Bargaining and Guilty Pleas, § 3.39 (1978). *State v. Jackson,* 17 Ariz. App. 533, 499 P.2d 111 (1972) (case remanded

for hearing to see if defendant in fact knew penalty where record does not show advice); *Dunlap v. United States*, 462 F.2d 163 (5th Cir. 1972) (defendant may withdraw plea and plead anew where record does not show advice on penalties); *United States v. Perwo*, 433 F.2d 1301 (5th Cir. 1970) (defendant must know the precise limits of the maximum possible penalty instead of substantially where the outer limits were).

The case should be remanded for a hearing to determine whether, in fact, the defendant knew the penalty limits. *State v. Curnyn, supra.*

McCOWN and BRODKEY, JJ., join in this dissent.