STATE OF NEBRASKA, APPELLEE, V.
RICHARD L. TWEEDY, APPELLANT.

309 N.W.2d 94

Filed August 7, 1981. No. 43876.

Robert G. Krafka of Krafka & Sixta, P.C., for appellant.

Paul L. Douglas, Attorney General, and Lynne Fritz for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, BRODKEY, WHITE, and HASTINGS, JJ., and COLWELL, Retired District Judge.

HASTINGS, J.

The defendant, Richard L. Tweedy, has appealed from the District Court for Dodge County which affirmed a county court conviction of Tweedy for second offense driving while under the influence of alcoholic liquor. Defendant received a sentence of 90 days in the Dodge County jail and suspension of his driver's license for 1 year. The defendant as-

signs as error the court's refusal to allow the defendant to withdraw his plea because the court had not established a voluntary and intelligent waiver of his constitutional rights when the court accepted defendant's guilty plea; the failure to find a factual basis for the plea; and the failure to follow the sentencing recommendations of the prosecuting attorney. We reverse.

The defendant had initially been charged on August 1, 1979, with third offense driving while under the influence of alcohol. Pursuant to a plea bargain, on September 27, 1979, the complaint was amended to second offense driving while under the influence of alcohol, and the defendant pleaded guilty to the amended charge. The Dodge County attorney's office recommended a 2-year probation to include a $200 fine, loss of driving privileges during probation except for work and probationary purposes, and antibuse and inpatient treatment if deemed necessary by the Dodge County Chemical Abuse Program staff. The court pointed out to the defendant that such recommendation was only that of the county attorney's office and that the court was not obligated to "follow any plea agreement." After hearing from the defendant that he was pleading guilty because he did in fact commit the crime, the county court accepted the plea and ordered the defendant to report to the chief probation officer for a presentence investigation and to the Dodge County Chemical Abuse Program office for evaluation and testing. A presentence report was furnished to the court on October 25, 1979, which contained overwhelming evidence in the section containing the police report to support a finding of driving while intoxicated, including a gas chromatograph test of twenty-hundredths of one percent.

The matter came on for sentencing on December 3, 1979. On that date the court continued the matter until January 3, 1980, and deferred sentencing pending the defendant's successful completion of inpatient treatment at an approved treatment facility of his

choice. The matter again came on for sentencing on May 15, 1980. By that time, the court had learned that the defendant had been terminated from the treatment program because of two unexcused absences. The court ordered the defendant to serve 90 days in the Dodge County jail, and a 1-year suspension of his driver's license. The sentence and conviction were appealed to the District Court for Dodge County and there affirmed.

Defendant's second and third assignments of error may be disposed of rather quickly. The preferred procedure for ascertaining whether or not a factual basis exists to support a guilty plea is to inquire directly of the defendant. However, an examination of a presentence report containing such facts made before sentencing is an acceptable alternative. *State v. Daniels* 190 Neb. 602, 211 N.W.2d 127 (1973); *State v. Leger*, 190 Neb. 352, 208 N.W.2d 276 (1973). We have also suggested that by a defendant admitting that he is in fact guilty of the crime charged, he has furnished a factual basis for accepting the plea. *State v. Hyslop*, 189 Neb. 331, 202 N.W.2d 595 (1972).

There are two answers to the defendant's contention that the trial court failed to follow the recommendations of the county attorney. A defendant has no legal basis to rely on a sentence recommended as part of a plea bargain where the trial court has made it clear that it was not in any way bound by such agreement. *State v. Ristau*, 201 Neb. 784, 272 N.W.2d 274 (1978). Furthermore, the court made it abundantly clear to the defendant that before it would consider probation for the defendant it would be necessary for him to complete a program of inpatient treatment for alcohol. He failed to do so.

There is no merit to either of these two assignments of error.

A more difficult problem is presented by defendant's claim that there was no voluntary and intelligent waiver of his constitutional rights prior to the accept-

ance of his guilty plea. In other words, we are faced with the general question of the applicability of the principles of *Boykin v. Alabama,* 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), to misdemeanors. *Boykin* identified the three main constitutional rights waived when a plea of guilty is accepted, i.e., the privilege against self-incrimination, the right to trial by jury, and the right to confront one's accusers. "We cannot presume a waiver of these three important federal rights from a silent record." *Boykin* at 243.

This court has been reluctant to embrace unequivocally the specific holdings of *Boykin.* "This requirement of an item-by-item review of constitutional rights on a guilty plea is a strained and a too extreme construction of those cases." *State v. Turner,* 186 Neb. 424, 425, 183 N.W.2d 763, 765 (1971). However, we did adopt the holding of *Boykin* in principle. "What Boykin says is that the court cannot presume a waiver of federal constitutional rights from a silent record. That case requires that a plea of guilty must not only be intelligent and voluntary to be valid but the record must affirmatively disclose that the defendant entered his plea understandingly and voluntarily." *Turner* at 425, 183 N.W.2d at 765. If we concede that the record must affirmatively show an intelligent plea, understandingly entered, it is difficult to imagine how this can be demonstrated unless that same record discloses knowledge on the part of a defendant as to what rights he is waiving when entering such plea.

In any event, does the *Boykin-Turner* rule apply to misdemeanor proceedings? The courts of several of our sister states have encountered the same problem. In an exhaustive opinion by Tobriner, J., the California Supreme Court in *Mills v. Municipal Court,* 10 Cal. 3d 288, 515 P.2d 273, 110 Cal. Rptr. 329 (1973), held that *Boykin* was applicable to all misdemeanors regardless of penalty. "A misdemeanor defendant no less than a felony defendant relinquishes various constitutional rights by entering a plea of guilty. There is no question,

of course, that in misdemeanor proceedings a defendant retains fully both his right to confront his accusers and his privilege against self-incrimination [citations omitted]; moreover, in this state, every misdemeanor defendant has a right to a trial by jury." *Mills* at 298, 515 P.2d at 280, 110 Cal. Rptr. at 336. "The People have suggested no logical basis for confining the rulings of *Boykin* and *Tahl* to the felony context in which they were enunciated, and we can discern no rational ground for such a distinction." *Id.* at 299, 515 P.2d at 281, 110 Cal. Rptr. at 337. "Under these circumstances, we believe that it would be more expedient simply to provide for an adequate record of a defendant's waivers in all felony and misdemeanor cases, rather than to require the trial court first to make a pre-arraignment determination of the potential sentence a misdemeanor defendant might receive, and then to obtain explicit waivers from those who face imprisonment." *Id.* at 301, 515 P.2d at 282, 110 Cal. Rptr. at 338.

In *Cleveland v. Whipkey*, 29 Ohio App. 2d 79, 278 N.E.2d 374 (1972), the Supreme Court of Ohio reached a similar conclusion. "The Supreme Court, however, did not limit its decisions to felonies nor did it include or exclude misdemeanors. The court only made flat assertions that these rights and privileges applied to criminal cases.

"Academically, and based on sound legal reasoning, these same rules should apply to misdemeanors as well as felonies. Valid reasons have not been presented why the Supreme Court rules regarding waivers of constitutional rights should not apply to misdemeanors as well as to felonies. The labels of 'misdemeanor' and 'felony' should not control whether a defendant is entitled to all of his constitutional rights." *Cleveland* at 84, 278 N.E.2d at 378.

The Michigan Court of Appeals in *People v. Tomlinson*, 50 Mich. App. 655, 213 N.W.2d 803 (1973), apparently following general court rules promulgated

by the Supreme Court, refused to apply the requirements of *Boykin* to "simple misdemeanors," i.e., those where the penalty is less than 6 months' imprisonment. Its reason for such decision was that "less solicitude is required than reciting the litany of constitutional rights which the defendant is waiving" in a case involving a 10-day jail sentence and a $50 fine. *Tomlinson* at 659, 213 N.W.2d at 805.

Although holding that the record did show that defendant was made aware of the constitutional rights which would be waived by a guilty plea, the court in *Crew v. Nelson*, 88 S.D. 162, 216 N.W.2d 565 (1974), held that *Boykin* was applicable to misdemeanor cases. "We first conclude that the Boykin standards of arraignment apply generally to misdemeanor cases. A misdemeanor defendant has the same rights to trial, to confronting his accusers, and to his privilege against self-incrimination. Thus we see no rational basis for making a distinction between a felony and a misdemeanor case." *Crew* at 164-65, 216 N.W.2d at 566.

We do recognize, however, that there is a vast difference between the impact of a waiver of constitutional rights when one's liberty is involved as opposed to his pocketbook. In *Argersinger v. Hamlin*, 407 U.S. 25, 92 S. Ct. 2006, 32 L. Ed. 2d 530 (1972), the Court held that no person may be imprisoned for any offense absent a knowing and intelligent waiver of counsel. In arriving at that decision, the Court reviewed the authorities providing for specified standards required under the sixth amendment for all criminal prosecutions. These included the requirement of a public trial, the right to be informed of the nature and cause of the accusation, the right of confrontation, and compulsory process for obtaining the attendance of witnesses. "We have never limited these rights to felonies or to lesser but serious offenses." *Argersinger* at 28.

We therefore hold that no defendant may be imprisoned for any offense, whether a traffic infraction, misdemeanor, or felony, absent a knowing and intelli-

gent waiver of his rights as provided for by the *Boykin-Turner* rule. That means that such defendants are entitled to be informed of the nature of the charges against them, the right to assistance of counsel, the right to confront witnesses against them, the right to a jury trial where otherwise authorized, and the privilege against self-incrimination. A voluntary and intelligent waiver of these rights must affirmatively appear from the record.

We realize that this holding may place some additional burdens on some of the municipal and county courts which have not heretofore followed this procedure. Therefore, the rule announced today is to be applied prospectively only, i.e., to guilty pleas taken after the date of the issuance of the mandate in this case.

It remains only for us to apply these principles to the instant case. The defendant was represented by counsel at all stages of the proceedings. (We should mention, however, that counsel was not the same as the one representing the defendant on this appeal.) The defendant was advised that the charges against him had been reduced from third offense to second offense driving while intoxicated. The defendant declared that no threats or promises had been made to him. He was advised that the recommendations of the county attorney as to probation were not binding on the court. The trial court then stated "[t]hat the Court isn't obligated to follow any plea agreement. Do you understand what your rights are in this Court?" to which the defendant replied "Uh—yes"; following which the trial court stated, "Do you have any question about any of those rights at this time that you wish to have explained?" and the defendant said "No." He was told of the possible penalties. The defendant was then asked by the court if he entered "this plea of guilty voluntarily, knowingly, intelligently and with understanding of the consequences of your plea," and he replied "Yes."

It is readily apparent that the *record* fails to disclose

that defendant knew of his right to a jury trial, of the right to confront witnesses against him, or of the privilege against self-incrimination. It is therefore impossible to conclude from a record entirely barren of any facts demonstrating that defendant understood his various rights that the defendant voluntarily and intelligently gave them up by pleading guilty. The case is reversed, defendant's conviction is vacated, and the cause is remanded to the District Court for further proceedings.

Before concluding, however, we cannot urge strongly enough that *all* courts should devise and implement a standard procedure for explaining the various rights to defendants entering pleas of guilty. If this is done, there should be no reason in the future for a court to fail to properly advise defendants of their constitutional rights when offering pleas of guilty. However, we should hasten to add that defense counsel are not immune from their share of criticism in cases of this kind. The fact that we employ the adversary system in the administration of justice does not mean that defense counsel have no responsibility to the court. It is incumbent upon counsel to take the necessary precautions to ensure that the record made adequately demonstrates for the benefit of the court that the defendant has knowledge of his rights and freely and voluntarily waives them before allowing him to plead guilty.

REVERSED AND REMANDED.

COLWELL, Retired District Judge, dissenting.

I must respectfully dissent from the opinion of the majority of the court in this case which reverses the judgment entered by the District Court of Dodge County affirming defendant's conviction in the county court for second offense driving while under the influence of alcoholic liquor and vacating such conviction, which conviction was based upon defendant's plea of guilty to said charge. In his appeal to this court, the

defendant *inter alia* assigns as error the refusal of the court to allow the defendant to withdraw his plea of guilty, contending that there was no voluntary and intelligent waiver of his constitutional rights at the time the court accepted his guilty plea.

The majority of the court in today's action again relies on the case of *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), which case in its opinion pointed out three constitutional rights which are waived upon the acceptance of a guilty plea, to wit, (1) the privilege against self-incrimination, (2) the right to trial by jury, and (3) the right to confront one's accusers. The Court in that opinion stated at 239: "*So far as the record shows, the [trial] judge asked no questions of [defendant] concerning his plea, and [defendant] did not address the court.*" (Emphasis supplied.) The Court further stated at 243: "We cannot presume a waiver of these three important federal rights from a silent record."

In today's opinion, the majority states: "We therefore hold that no defendant may be imprisoned for any offense, whether a traffic infraction, misdemeanor, or felony, absent a knowing and intelligent waiver of his rights as provided for by the *Boykin-Turner* rule." The *Turner* referred to in the above quotation refers to the case of *State v. Turner*, 186 Neb. 424, 183 N.W.2d 763 (1971), which sets forth the rule for accepting pleas of guilty that has been in effect in this state for over 10 years, and which has been consistently followed by other Nebraska decisions since that time. That rule states that a plea of guilty must not only be intelligent and voluntary to be valid but the record must affirmatively disclose that the defendant entered his plea understandingly and voluntarily. In *Turner*, and subsequent cases, the same argument was made, relying specifically upon *Boykin v. Alabama, supra,* that *Boykin* requires an affirmative showing in the record that the trial court advised the defendant of his privilege against compulsory self-incrimination

as well as his right to confront his accusers before a determination of his waiver of these constitutional guarantees. In *Turner*, this court stated at 425, 183 N.W.2d at 765: "We do not interpret Boykin so strictly. What Boykin says is that the court cannot presume a waiver of federal constitutional rights from a silent record. That case requires that a plea of guilty must not only be intelligent and voluntary to be valid but the record must affirmatively disclose that the defendant entered his plea understandingly and voluntarily."

As pointed out by the majority in its opinion, the defendant was represented by counsel at all stages of the proceedings; he was advised that the charges against him had been reduced from third offense to second offense driving while intoxicated; he declared that no threats or promises had been made to him; and he was advised that the recommendations of the county attorney as to probation were not binding on the court. The trial court then inquired of the defendant if he understood "what your rights are in this Court," to which the defendant replied "Uh—yes"; following which the trial court asked if he had "any question about any of those rights at this time that you wish to have explained," to which the defendant responded "No." He was told of the possible penalties for the offense. The court then asked him if he entered his plea of guilty "voluntarily, knowingly, intelligently and with understanding of the consequences of your plea," and he replied "Yes." The court then proceeds to point out in the majority opinion that the record does not disclose that the defendant knew of his right to a jury trial, or of his right to confront witnesses against him, or of the privilege against self-incrimination, and therefore that defendant's plea of guilty to the charge was not a voluntary and intelligent plea. The meaning and extent of the court's language in *Boykin v. Alabama, supra,* have been the subject of discussion and rulings by the courts of

innumerable jurisdictions in this country since the case was decided in 1969, and the majority of the cases decided since that time which have considered the question have held that the express enumeration of the three rights referred to and the express waiver of the accused prior to the acceptance of the guilty plea are not a matter of constitutional due process. The following cases are enlightening as to the status of the rule announced in the *Boykin* case since it was released.

In *Wilkins v. Erickson,* 505 F.2d 761 (9th Cir. 1974), the court discussed the issue in some detail, stating at 763:

> "Boykin Does Not Require
> Articulation of the Three Rights

"Wilkins relies upon Boykin v. Alabama, *supra.* He contends that since he was not personally advised by the trial judge on entry of his plea that by pleading guilty he was waiving (1) his privilege against self-incrimination, (2) his right to trial by jury, and (3) his right to confront his accusers; that he was unaware of the consequences, and that his plea, therefore, was not voluntarily and intelligently made. Wilkins further argues that the failure of the trial judge to articulate these three rights on the record resulted in a 'silent' record which cannot be supplemented by a post-conviction evidentiary hearing. Accordingly, he wants the opportunity to replead.

"Wilkins relies on the following language from *Boykin:*

'We cannot presume a waiver of these three important federal rights from a silent record.

'What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what a plea connotes and of its consequence. When the judge discharges that function, he leaves a record adequate for any review that may be later sought.'

395 U.S. at 243-244, 89 S. Ct. at 1712. [Footnote reference omitted]

"The district court's decision, however, is supported by Supreme Court decisions subsequent to *Boykin* and several circuits. The rigid interpretation of *Boykin* urged by Wilkins has not been adopted by the Supreme Court in subsequent decisions on voluntariness of guilty pleas. In Brady v. United States, 397 U.S. 742, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970), the Court citing *Boykin*, upheld a guilty plea as voluntary and intelligent even though defendant had not been specifically advised of the three rights discussed in *Boykin*. The *Brady* Court clarified *Boykin* by stating, '[t]he new element added in *Boykin* was the requirement that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily.' 397 U.S. at 747-748 fn. 4, 90 S. Ct. at 1468. In North Carolina v. Alford, 400 U.S. 25, 31, 91 S. Ct. 160, 164, 27 L. Ed. 2d 162 (1970), the Court stated that in determining the validity of guilty pleas the 'standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.' Specific articulation of the *Boykin* rights is not the sine qua non of a valid guilty plea.

"Other circuits have considered the application of *Boykin* to state prisoner petitions and have held in accordance with Brady v. United States, *supra.* McChesney v. Henderson, 482 F.2d 1101, 1106 (5 Cir. 1973) (The court alternately held that a subsequent state evidentiary hearing could be considered); Wade v. Coiner, 468 F.2d 1059, 1060 (4 Cir. 1972). *Cf.* Todd v. Lockhart, 490 F.2d 626, 627 (8 Cir. 1974) (A subsequent state evidentiary hearing failed to decide the question of voluntariness. On appeal from denial of a writ of habeas corpus by the district court, its judgment was reversed).

"The Ninth Circuit has apparently not passed on the

question. Accordingly, we hold that *Boykin* does not require specific articulation of the above mentioned three rights in a state proceeding. Brady v. United States, 397 U.S. at 747-748, 90 S. Ct. 1463 and cases *supra*."

Likewise, in *Wood v. Morris*, 87 Wash. 2d 501, 554 P.2d 1032 (1976), the court discussed *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), at great length, and concluded by stating at 507-08, 554 P.2d at 1036-37:

"[W]hile it has been held that a defendant's constitutional rights to a jury trial, confrontation and protection against self-incrimination must be specifically and expressly enumerated by the trial judge and expressly waived by the accused prior to acceptance of a guilty plea, *see In re Tahl, supra* at 131-33 [1 Cal. 3d 122, 460 P.2d 449, 81 Cal. Rptr. 577 (1969)]; *Higby v. Sheriff of Clark County, supra* at 781 [86 Nev. 774, 476 P.2d 959 (1970)], we adopt an interpretation of *Boykin* which does not impose this requirement as a matter of constitutional due process. This is the view of the majority of courts which have considered the question. *See, e.g., McChesney v. Henderson, supra* at 1106-10; *United States v. Sherman, supra* at 305; *Stinson v. Turner*, 473 F.2d 913, 915-16 (10th Cir. 1973); *Wade v. Coiner, supra* at 1061; *State v. Turner*, 186 Neb. 424, 425, 183 N.W.2d 763 (1971); *People v. Kuchulan*, 390 Mich. 701, 704, 213 N.W.2d 95 (1973); *Commonwealth v. Morrow*, 363 Mass. 601, 296 N.E.2d 468, 472-73 (1973); *Merrill v. State*, 87 S.D. 285, 290, 206 N.W.2d 828 (1973). Supreme Court decisions subsequent to *Boykin* make this clear. In *Brady v. United States*, 397 U.S. 742, 25 L. Ed. 2d 747, 90 S. Ct. 1463 (1970), and *North Carolina v. Alford*, 400 U.S. 25, 27 L. Ed. 2d 162, 91 S. Ct. 160 (1970), the court, citing *Boykin*, upheld guilty pleas without any indication that specification of the three constitutional rights enumerated in *Boykin* was required to be made at the time of the acceptance of the pleas. We also note

that in both cases the court relied upon evidence received at post-conviction hearings. We hold, therefore, that there is no constitutional requirement that there be express articulation and waiver of the three rights referred to in *Boykin* by the defendant at the time of acceptance of his guilty plea if it appears from the record, and the clear and convincing weight of extrinsic evidence if the record is unclear on the matter, that the accused's plea was intelligently and voluntarily made, with knowledge of its consequences."

It should be noted that the court includes among the cases in support of its finding that the requirement of *Boykin* is not a matter of constitutional due process the Nebraska case of *State v. Turner, supra.* Nebraska has followed the rule set down in *Turner* in at least a dozen cases since *Turner* was decided, including the following cases: *State v. Lewis*, 192 Neb. 518, 222 N.W.2d 815 (1974); *State v. Fowler*, 201 Neb. 647, 271 N.W.2d 341 (1978); *State v. Curnyn*, 202 Neb. 135, 274 N.W.2d 157 (1979); *State v. Hill*, 204 Neb. 743, 285 N.W.2d 229 (1979); *State v. Rouse*, 206 Neb. 371, 293 N.W.2d 83 (1980). I believe it is clear in the instant case that defendant's guilty plea to the charge against him was voluntarily and intelligently entered, notwithstanding the apparent failure of the court to inquire with reference to the three matters set out in *Boykin*. In addition to the verbatim record as set forth in the record, there were other records, facts, and circumstances before the court at that time, including (1) the affidavit for arrest warrant by the arresting officer describing the defendant's erratic driving and the results of his breath test which showed the alcohol content in his blood at the time to be twenty-hundredths of one percent; (2) the journal entry of the arraignment stating that the defendant was advised of the nature of the charge, which was for driving while intoxicated (DWI), third offense; (3) the journal entry of his conviction on September 27, 1979, which recited in part: "[T]he Defendant advised

the Court that he understood his rights, waived his right to jury . . . ." Also, "It was determined that the plea was entered voluntarily, knowingly, and intelligently and with the understanding of the consequences of the plea"; (4) the defendant was represented by retained counsel; and (5) the defendant was familiar with the nature of the proceedings, having twice previously been convicted of DWI. After the plea bargained guilty plea, the sentence was not imposed until almost 8 months had lapsed, during which time the defendant was attempting alcohol rehabilitation. I believe that the facts in this case clearly indicate that the defendant's guilty plea fully complied with the standards set out in *State v. Turner*, 186 Neb. 424, 427, 183 N.W.2d 763, 766 (1971), that: " 'The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant' "; and, as further stated in *Turner* at 425, 183 N.W.2d at 765: "This requirement of an item-by-item review of constitutional rights on a guilty plea is a strained and a too extreme construction of those cases." The majority opinion states the rule that the defendant is entitled to be informed of certain enumerated rights, including those that are a basis for his appeal, is to apply only *if imprisonment is imposed.* Such a rule would automatically narrow the holding of *Turner* and our subsequent cases to require an item-by-item dialogue, which is contrary to our established law.

Further, I disagree with the holding of the majority that the *Boykin-Turner* waiver rule applies to all misdemeanors and requires that a voluntary and intelligent waiver of those rights must affirmatively appear from the record. The courts are divided as to whether the *Boykin* rule applies to misdemeanors. In support of its conclusion that it does, the majority opinion cites as its principal authority the case of *Mills v. Municipal Court*, 10 Cal. 3d 288, 515 P.2d 273, 110 Cal. Rptr. 329 (1973), where the court held that

*Boykin* was applicable to all misdemeanors. However, in that same opinion the court pointed out at 303, 515 P.2d at 284, 110 Cal. Rptr. at 340: "[I]n evaluating the procedures utilized in inferior courts for advising defendants of their rights and obtaining 'on the record' waivers, the realities of the typical municipal and justice court environment cannot be ignored, and that, *so long as the spirit of the constitutional principles are respected,* 'the convenience of the parties and the court should be given considerable weight.'" (Emphasis supplied.) On the contrary, the court in *People v. Tomlinson,* 50 Mich. App. 655, 213 N.W.2d 803 (1973), held that the *Boykin* rule did not apply to simple misdemeanors where the penalty is less than 6 months' imprisonment. The problem of applying the strict requirements set out in *Boykin* to minor criminal matters was early recognized by the advisory committee of the American Bar Association in preparing their tentative draft of "Standards Relating to Pleas of Guilty" in 1967. In their introduction to those standards, it is stated as follows: "The Advisory Committee proposes these standards for application to all serious criminal cases. More simplified procedures, not dealt with in this report, could properly be used for minor traffic offenses and other lesser offenses, such as those typically proceeded against in court without counsel for the prosecution. The category of cases not covered by these standards may well vary from state to state, and will depend upon such matters as the allocation of jurisdiction between courts, the availability of facilities, and the understanding of the general public of the penalties for certain crimes."

It should be remembered that in Nebraska county and municipal courts have jurisdiction of misdemeanor offenses and traffic offenses, and daily handle a very large volume of such cases, generally under adverse circumstances and with limited supportive personnel. It is not unusual for some of those courts to handle in excess of 50 criminal cases during the course

of a single court day. During the calendar year 1980, the county courts in Nebraska processed approximately 190,000 traffic cases and 50,000 misdemeanor and ordinance cases; and during the same period, the municipal courts processed 118,000 traffic, ordinance, and misdemeanor cases. These courts are courts of record and generally utilize tape recording equipment to record the proceedings in such courts. As a general rule, the tapes are destroyed in approximately 60 days. The verbatim records of cases similar to that involved in this appeal are usually brief and are often supplemented by the judges' handwritten notes, findings, and orders, necessitated by the large volume of cases handled and the urgency to make a record of the case and then to proceed with the next case. The majority, in its opinion, recognizes these problems and the necessity of coordinating them with the public's interest in prompt, efficient administration of the judicial system. To require the same degree of care and exactitude in the processing of such cases as is required for the arraignments of defendants charged with felonies and more serious offenses can only result in impeding the efficiency of the judicial system. All that should be required in such cases is that the rule as announced in *State v. Turner*, that the plea of the defendant be voluntary and understandingly made, should suffice. To require a reversal of a conviction based upon a guilty plea made by the defendant because an item-by-item interrogation is not conducted by the trial judge would, in my opinion, be unnecessarily burdensome and would have a crippling effect upon those engaged in enforcing the laws of this state, and upon the judicial system itself. This, I believe, is totally unnecessary and should not be done. In the few and rare instances where injustice is done under the existing system, there is ample opportunity for relief by a defendant through post conviction procedures, as is done in other states, or by further dialogue between the court and the defendant to es-

tablish the existence of other required elements for a guilty plea which were previously not inquired into at the original arraignment. Guilty pleas should not be routinely set aside where it is clear that such pleas were voluntarily, understandingly, and intelligently made, as I believe was clearly true in this case.

For all the reasons stated above, I must respectfully dissent from the opinion of the majority of the court in this case.

I am authorized to state that BRODKEY, J., joins in this dissent.

BOSLAUGH, J., joins in this dissent.