STATE OF NEBRASKA, APPELLEE, V. BERNARD R. SCHAEFFER, APPELLANT.

359 N.W.2d 106

Filed December 7, 1984.   No. 83-868.

Thomas A. Wagoner, for appellant.

Bernard R. Schaeffer, pro se.

Paul L. Douglas, Attorney General, and Terry R. Schaaf, for appellee.

Krivosha, C.J., Boslaugh, White, Hastings, Caporale, Shanahan, and Grant, JJ.

Grant, J.

In this post conviction proceeding, defendant, Bernard R. Schaeffer, appeals from the trial court's denial of his pro se "Motion to Withdraw Guilty Plea" and the denial of a "Motion to Vacate Conviction and Sentence" filed by defendant's appointed counsel. For the reasons hereinafter set out we affirm.

The record shows that on May 22, 1977, a complaint was filed in Hall County, Nebraska, against defendant, charging that on May 18, 1977, defendant, while in the perpetration of a robbery, did feloniously kill Donald N. Berry, Jr. On May 22, 1977, defendant appeared with his own private counsel for a bond hearing. Bond was denied. On May 25, 1977, the court permitted defendant's counsel to withdraw as private attorney of record and appointed the same attorney to represent defendant.

Counsel vigorously represented defendant throughout the proceedings. Motions for a change of venue and for a continuance were filed and denied after hearing. A motion to transfer the case to juvenile court was filed on the grounds that defendant was 16 years old. Another hearing was held and the motion to transfer was denied. A motion to suppress all oral or written statements was filed and, after hearing, denied.

On June 27, 1977, defendant was arraigned on an

information filed on June 21, 1977. His counsel was present. The information charging him with felony murder was read in full to defendant. Defendant was interrogated by the trial court judge and specifically stated that he understood the nature of the proceedings; that he understood he could plead guilty or not guilty; that he knew he was entitled to a jury trial and knew that he had the right to cross-examine witnesses against him; and that he knew he had a presumption of innocence in his favor and knew that the State had the burden to prove him guilty. He was then asked how he pled. His attorney intervened and requested that defendant be permitted to stand mute. The court allowed this procedure and entered a plea of not guilty on defendant's behalf. The case was set for trial to begin on August 1, 1977. After this arraignment, motions almost identical to those described above were again filed. Additional hearings were held. All these motions were again overruled.

On August 1, 1977, defendant appeared for trial with his attorney. Jury selection started on August 1 and continued on August 2, up to 2:40 p.m. At that time defendant's counsel informed the court that "we would like to withdraw our plea of standing mute and, with the Court's consent, enter a plea of no contest to the information." The court specifically asked defendant if the defendant had consulted with his attorney and with defendant's parents about changing his plea. The defendant answered that he had consulted with both his parents and his attorney. Defendant also answered that no one had made any promises or threats to him in exchange for the plea and that he understood the penalty, in that if he pled nolo contendere to the charge, he knew the court "could put me to death, or life in prison."

The trial court then told defendant that he could not accept the nolo contendere plea without a basis for accepting it and asked defendant to tell him what happened. Defendant then, in open court and in the presence of his counsel, described the homicide in great detail, including the events that led up to the robbery which culminated in the murder, and the events after the murder, including the splitup of the money stolen and the manner of disposing of the murder weapon. Defendant told how he obtained a nine-shot Ruger automatic pistol and how he

and another had transported the victim to a local sandpit in Hall County where, defendant stated, he shot the victim. Defendant stated, "I emptied the clip and went back to the car and got another clip and emptied it."

The court then asked for the appointment of a three-judge sentencing panel to determine if defendant should be sentenced to life in prison or to death. On September 1, 1977, the three-judge panel was convened for the sentencing hearing. Before this sentencing hearing began, the trial judge, who acted as the presiding judge of the panel, stated to defendant in open court:

> Bernard, previously, on the 2nd day of August, you appeared in this Court and at that time desired to enter a plea of no contest, which plea I accepted. I want to make certain that you realize that by entering this plea and by its being accepted that you have given up certain Constitutional Rights.

The court then interrogated defendant, in further specific detail, if he was aware of his constitutional rights. At the conclusion of the interrogation, the presiding judge inquired of defendant, "Now, do you still want to let that plea stand?" Defendant answered "Yes."

After this colloquy the sentencing hearing was held before the three-judge panel and the matter taken under advisement by the panel. On September 30, 1977, the sentencing panel reconvened and sentenced defendant to life in prison. No appeal was taken from the sentence imposed or from the denial of defendant's motion for new trial.

On June 1, 1983, defendant pro se filed his verified motion seeking post conviction relief in requesting leave to withdraw his plea of no contest. In the motion the defendant stated: "Defendant alleges that on August 2, 1977, he entered a plea of no contest to an information charging the defendant with murder in the first degree . . . ." The motion further alleged that when the trial court accepted the defendant's plea of no contest, the court did not ask defendant if defendant knew he

> was waiving his right to call witnesses, confront witnesses, remain silent, have a right to a trial either to a judge or to a jury, nor did the Court inquire of the defendant whether

he knew and understood the elements that the State would have to prove beyond a reasonable doubt should the matter go to trial.

Defendant further alleged in his motion that the court, on September 1, 1977, "did attempt to clear up the problem with the plea; however, the Court did not allow the defendant to withdraw his plea . . . ."

On June 6, 1983, the same attorney who represented defendant at trial was appointed to represent defendant in this post conviction hearing, pursuant to defendant's written request.

On October 17, 1983, the trial court entered its order finding that "upon the files and records . . . the defendant's plea of no contest was intelligently and voluntarily made," and dismissed both the motion to withdraw and the motion to vacate. The court found that files and records available to the court enabled the court to decide the motions pursuant to Neb. Rev. Stat. § 29-3001 (Reissue 1979) without holding a hearing.

On this appeal the defendant assigns three errors: (1) In refusing defendant an evidentiary hearing; (2) In not vacating the conviction of defendant; and (3) In refusing to allow defendant to withdraw his plea and to hold an evidentiary hearing thereon.

With regard to defendant's allegations that the court erred in failing to grant him an evidentiary hearing, we note that all the facts set out above, and hereinafter, are to be found in the defendant's "motion and the files and records of the case," and there was no need for the court to hold an evidentiary hearing. See, § 29-3001; *State v. Meredith*, 212 Neb. 109, 321 N.W.2d 456 (1982); *State v. Nokes*, 209 Neb. 293, 307 N.W.2d 521 (1981).

We agree with the trial court's finding that the files and record affirmatively disclose that the defendant's plea was entered voluntarily and knowingly, and the trial court did not err in refusing an evidentiary hearing.

With regard to defendant's allegation that his conviction should have been vacated because it was not voluntary, we note that defendant's no contest plea was entered in 1977. Defendant contends the checklist set out in *State v. Tweedy*, 209 Neb. 649,

309 N.W.2d 94 (1981), was not strictly adhered to at the arraignments of June 27 and August 2, 1977. The *Tweedy* case, however, was specifically limited to prospective application. The appropriate standard to test the constitutional validity of defendant's plea is clearly expressed in *State v. Lewis*, 192 Neb. 518, 222 N.W.2d 815 (1974), *State v. Hall*, 188 Neb. 130, 195 N.W.2d 201 (1972), and *State v. Turner*, 186 Neb. 424, 183 N.W.2d 763 (1971). That standard is whether the guilty plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. That standard was clearly met in this case.

The trial of defendant in this case had commenced and the jury selection process had begun when defendant asked to change his plea. Defendant was represented by the same counsel from his first court appearance seeking bond, through his sentencing. Defendant and his counsel were informed of all of defendant's rights. This court, in *State v. Jones, ante* p. 382, 386, 355 N.W.2d 227, 230 (1984), quoted with approval from *Garland v. Washington*, 232 U.S. 642, 34 S. Ct. 456, 58 L. Ed. 772 (1914), as follows: " 'Due process of law, this court has held, does not require the State to adopt any particular form of procedure, so long as it appears that the accused has had sufficient notice of the accusation and an adequate opportunity to defend himself in the prosecution.' " Defendant had sufficient knowledge of the charge against him and was given every opportunity to defend himself. Defendant's plea was voluntary and represented a clear, logical choice among the alternatives available to him—to continue the trial or to enter a plea. The court was correct in not vacating defendant's plea.

With regard to defendant's assignment of error that he was not permitted to withdraw his plea, the defendant would have us analogize this case to that of *State v. Lewis, supra*, where we remanded for a rehearing on the issue of voluntariness of the plea because the defendant was not informed of the penalty for the crime until the sentencing hearing and then, the court noted, he was not given an opportunity to change it. That is not the case here. We have held, as set out above, that defendant's plea was voluntary. In addition, on the date of the sentencing hearing, after being specifically informed of other rights not

mentioned in the earlier arraignments, defendant was asked, again in the presence of his counsel, "Now, do you still want to let that plea stand?" and answered, "Yes." This question constituted an offer to defendant and his counsel to elect not to let the plea stand; that is, to withdraw the plea. Defendant, with the advice of his counsel, indicated to the court that he did not want to change the plea. Defendant did not at any time ask to withdraw or change his plea of August 1, 1977, until the filing of this post conviction action on June 1, 1983.

We affirm the court's finding in the post conviction proceeding, that the plea was voluntarily, intelligently, and knowingly entered and therefore should not be vacated. We hold that the court did not err in basing its decision on the files and records of the court before the court without holding an evidentiary hearing.

AFFIRMED.