IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. GRANTZINGER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JACOB T. GRANTZINGER, APPELLANT.

Filed August 16, 2022.    No. A-22-112.

Appeal from the District Court for Hall County: PATRICK M. LEE, Judge. Affirmed.

Katheryn L. Harouff, of Stehlik Law Firm, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Melissa R. Vincent for appellee.

PIRTLE, Chief Judge, and BISHOP and WELCH, Judges.

BISHOP, Judge.

## INTRODUCTION

Following his plea of guilty, Jacob T. Grantzinger was convicted of child abuse. The Hall County District Court sentenced him to 27 to 45 years' imprisonment. Grantzinger argues that there was insufficient evidence for his conviction and the sentence imposed was excessive. We affirm.

## BACKGROUND

On June 29, 2021, the State filed an information charging Grantzinger with three counts: count I, child abuse, a Class II felony, pursuant to Neb. Rev. Stat. § "28-707(5) [(sic)]" (Cum. Supp. 2020); count II, assault 1st degree, a Class II felony, pursuant to Neb. Rev. Stat. § 28-308 (Reissue 2016); and count III, strangulation, a Class IIIA felony, pursuant to Neb. Rev. Stat. § 28-310.01 (Cum. Supp. 2020). K.G., born in February 2021, was the named victim in all three

- 1 -

counts. The State later filed an amended information charging Grantzinger with the same three counts but changing the statute number for count I to § 28-707(7).

A hearing was held on December 14, 2021. Pursuant to a plea agreement, Grantzinger pled guilty to count I of the amended information, and in exchange, the State dismissed counts II and III. According to the factual basis provided by the State,

> On April 20, 2021, law enforcement with the Hall County Sheriff's Office received a report regarding the abuse and neglect of an infant child. Officers had contact with [J.R.], the mother of K.G., date of birth within the information. They were shown security footage or surveillance footage from April 19, 2021, that showed the Defendant, Jacob Grantzinger, sitting on the bed with the eight-week-old infant.

> During the course of that video, Mr. Grantzinger is seen violently tossing the child about the bed, letting the child fall face first onto the bed, and at one point lifting the child up solely by the bib that is attached around the child's neck. A medical examination was conducted following the discovery of the assault, and a MRI showed that there was evidence of blood on the brain of K.G.

> These events all occurred in Hall County, Nebraska.

Grantzinger disagreed that he "violently threw [K.G.] around the bed," but otherwise agreed with the factual basis. The district court accepted Grantzinger's guilty plea to count I, child abuse, and found him guilty of the same. The court dismissed counts II and III. The case was set for sentencing.

After a hearing on February 1, 2022, the district court sentenced Grantzinger to 27 to 45 years' imprisonment, with credit for 8 days already served.

Grantzinger appeals.

## ASSIGNMENTS OF ERROR

Grantzinger assigns, summarized and reordered, that (1) the factual basis was insufficient to support his plea and conviction, and (2) the district court abused its discretion by imposing an excessive sentence.

## STANDARD OF REVIEW

A trial court is afforded discretion in deciding whether to accept guilty pleas, and an appellate court will reverse the trial court's determination only in case of an abuse of discretion. *State v. Theisen*, 306 Neb. 591, 946 N.W.2d 677 (2020).

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020).

A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition. *State v. Morton*, 310 Neb. 355, 966 N.W.2d 57 (2021).

ANALYSIS

SUFFICIENCY OF FACTUAL BASIS

Grantzinger asserts that the State's factual basis was insufficient to support his plea and conviction and therefore the conviction should be set aside.

The voluntary entry of a guilty plea or a plea of no contest waives every defense to a charge, whether the defense is procedural, statutory, or constitutional. *State v. Manjikian*, 303 Neb. 100, 927 N.W.2d 48 (2019). Thus, when a defendant pleads guilty or no contest, he or she is limited to challenging whether the plea was understandingly and voluntarily made and whether it was the result of ineffective assistance of counsel. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019). A sufficient factual basis is a requirement for finding that a plea was entered into understandingly and voluntarily. *State v. Jenkins*, 303 Neb. 676, 931 N.W.2d 851 (2019). Accordingly, Grantzinger has not waived his challenge to the factual basis. See *State v. Wilkinson*, 293 Neb. 876, 881 N.W.2d 850 (2016) (making it clear that defendant does not waive challenge to factual basis by entering plea, because sufficient factual basis is prerequisite for judicial finding that plea was entered into understandingly and voluntarily).

Grantzinger was convicted of child abuse, a Class II felony, pursuant to § 28-707(7). Section 28-707 provides, as relevant here:

(1) A person commits child abuse if he or she knowingly, intentionally, or negligently causes or permits a minor child to be:

(a) Placed in a situation that endangers his or her life or physical or mental health;

(b) Cruelly confined or cruelly punished;

(c) Deprived of necessary food, clothing, shelter, or care;

. . . .

(7) Child abuse is a Class II felony if the offense is committed knowingly and intentionally and results in serious bodily injury as defined in such section.

"Serious bodily injury" is defined as "bodily injury which involves a substantial risk of death, or which involves substantial risk of serious permanent disfigurement, or protracted loss or impairment of the function of any part or organ of the body." Neb. Rev. Stat. § 28-109(21) (Reissue 2016).

Grantzinger claims that K.G. "suffered no injury from the alleged incident referred to in the State's factual basis." Brief for appellant at 25. He argues there was no evidence to show that K.G. sustained any bodily injury, let alone serious bodily injury, and "[s]erious bodily injury is a necessary element to the offense of [c]hild abuse and without evidence thereof, the conviction cannot stand." *Id*.

It is well-settled law that a factual basis may be determined from inquiry of the defendant or county attorney, or by examination of the presentence investigation. *State v. Richter*, 220 Neb. 551, 371 N.W.2d 125 (1985). See, also, *State v. Tweedy*, 209 Neb. 649, 309 N.W.2d 94 (1981) (preferred procedure for ascertaining whether or not factual basis exists to support guilty plea is to inquire directly of defendant, but examination before sentencing of presentence report containing such facts is acceptable alternative); *State v. Cervantes*, 15 Neb. App. 457, 729 N.W.2d 686 (2007)

(factual basis for plea of guilty may be established by inquiry of prosecutor, interrogation of defendant, or examination of presentence report).

Among the items in the presentence investigation report (PSR) was a deputy sheriff's report dated April 20, 2021, that contains the following description of the April 19 incident as seen in the "home video surveillance":

The camera appears to be placed into a bedroom where an infant crib and regular bed are observed in view. Jake is observed sitting on the bed while feeding [K.G.] a bottle. [J.R.] is observed briefly in the corner of the screen talking with Jake before exiting the bedroom. The following events transpired immediately after [J.R.'s] departure. Jake puts down the bottle, props [K.G.] on his right knee and begins to vigorously rub and pound on [K.G.'s] back with his hand in attempt to burp him. [K.G.] at one point let out a yelp or small cry as Jake pounded on his back. The noise of Jake slapping on [K.G.'s] back can be heard in the video. Jake then, on several different occasions throughout the video, forcefully rocks [K.G.] backwards (so that he's parallel on his back to the bed) and back up to a seated position on his knee.

On several occasions, Jake makes loud burping noises close up to [K.G.'s] ear and also blows in his face. At the same time that Jake blows in [K.G.'s] face, it is apparent that Jake is doing some sort of action to [K.G.'s] head area but it is unclear on video exactly what is occurring. At one point, Jake throws [K.G.] into the air where he no longer has physical control of [K.G.'s] body and then catches him on his way down. At another point, [K.G.] is seated upright in Jake's lap and he lets go of [K.G.], causing [K.G.] to fall face down into the bed. Jake then proceeds to grab [K.G.] by only the bib secured around his neck and lifts him into the air and holds him there for several seconds without providing any other support. While this is happening, it is apparent [K.G.] is struggling to breathe due to the pressure the bib is placing on his throat. [K.G.'s] limbs are observed in distress, he makes gasping noises and after a prolonged amount of time in the air, his limbs go limp.

There is then a noise that comes from the video, which is clear it's a person speaking but it's otherwise inaudible. At that time, Jake brings [K.G.] down to his lap from the suspended position and begins talking back in the direction of the camera. [J.R.] is then observed coming into the bedroom and tells Jake to give her [K.G.] and is observed leaving the room crying with [K.G.].

A supplemental report by the deputy sheriff dated April 27, 2021, contains the following:

On 04-23-21 at approximately 1200 hours, I made contact with [J.R.] . . . and [K.G.] at Saint Francis Medical Center . . . . I briefed ER staff on the situation, which the provider on duty, Doctor TYLER RONNFELDT requested to view the video. Dr[.] Ronnfeldt immediately had concerns for the well being of [K.G.] and advised that the actions taken by [Grantzinger] could easily pose a substantial risk of serious bodily injury to [K.G.]. Dr[.] Ronnfeldt then spoke with [J.R.] about his plan to order a CT scan of [K.G.'s] brain and X-rays [sic] scans of [K.G.'s] entire body for signs of injury.

. . . .

- 4 -

On 04-24-21, [J.R.] advised they had an MRI scheduled for . . . that date. I received a text message later which stated the MRI results indicated that [K.G.] had a small subdural hematoma. . . .

I checked back in with [J.R.] on 04-27-21. . . . [J.R.] advised the doctors said [K.G.'s] 3 small brain bleeds would most likely reabsorb into his brain as he gets older.

The State argues that the "[t]he foregoing documents support a finding that Grantzinger caused serious bodily injury to K.G. by (1) handling him with enough force to cause his brain to bleed and (2) cutting off his air supply." Brief for appellee at 14. In his reply brief, Grantzinger notes that according to the PSR, J.R. reported to law enforcement that she had a difficult labor and ended up having K.G. through an emergency C-Section; he argues that "[i]t can be inferred that [K.G.'s] hematomas were caused by the difficult labor and not the actions of Grantzinger." Reply brief for appellant at 13. However, the State claims that in addition to causing K.G.'s brain to bleed, Grantzinger also cut off K.G.'s air supply and "[t]he latter circumstance alone created a substantial risk of death since K.G. struggled to breathe and went limp just before [J.R.] intervened." Brief for appellee at 14. We agree.

Given the record before us, we conclude that there was a sufficient factual basis for Grantzinger's guilty plea. The district court did not abuse its discretion in accepting Grantzinger's guilty plea to child abuse as charged in the amended information, nor did it abuse its discretion in finding him guilty of the same.

EXCESSIVE SENTENCE

Grantzinger argues that the district court abused its discretion by not placing him on a term of probation and by imposing an excessive sentence.

Grantzinger was convicted of one count of child abuse, a Class II felony. A Class II felony is punishable by 1 to 50 years' imprisonment. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2020). Grantzinger was sentenced to 27 to 45 years' imprisonment; his sentence was within the statutory range.

When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the violence involved in the commission of the crime. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020). The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Grantzinger was 27 years old at the time of sentencing. According to the PSR, Grantzinger was single and had one child (the victim in this case). He was a high school graduate and worked as a supervisor at a warehouse.

Grantzinger reported that his parents divorced when he was 4 years old, he lived with his mother until he was 16 years old but maintained regular contact with his father, and his mother had been emotionally/verbally abusive. After moving out of his mother's home, Grantzinger lived with his older brother, then a girlfriend, and then a roommate. In 2019, Grantzinger entered a short-term alcohol and drug treatment center to address his alcohol and marijuana use. After

completing treatment, he moved in with his grandparents with whom he continued to reside at the time of the PSR. Grantzinger reported having been sober for almost 2 years, but then relapsing after the current offense. He denied being under the influence of alcohol or any other substances at the time of the current offense. He reported struggling with depression for several years and was taking medication as prescribed.

Grantzinger's criminal history includes only "Criminal Mischief-$0-500" in 2019, for which he was sentenced to 6 months of probation and ordered to pay a fine and restitution. As for the current offense, the details have been set forth previously.

The probation officer conducted a "Level of Service/Case Management Inventory." Grantzinger was assessed as a "Medium Low" risk to reoffend. He scored "High" in the criminogenic risk factor domains for family/marital and alcohol/drug problems. He scored "Medium" in the domain for leisure/recreation. He scored "Low" in the domains for companions and procriminal attitude. And he scored "Very Low" in the domains for criminal history, education/employment, and antisocial pattern. On the Substance Abuse Questionnaire, Grantzinger scored in the "Maximum Risk range on the Alcohol Scale" and in the "Problem Risk range" on the "Stress Coping Scale."

The probation officer stated that "[i]f the Court chooses to utilize supervision, the Probation Office would ask that in addition to standard terms and conditions," the following recommendations be considered. "To address his High risk in the Family/Marital domain": completion of "Partners in Parenting," "Family Ties," and anger management programs; "DBT" group if deemed an appropriate candidate; and trauma programming. "To address his High risk in the Alcohol/Drug domain": completion of "Relapse Group," "Men's Group," "Building Social Networks," and "Staying Sober" programs; participation in a co-occurring evaluation and following recommendations; no use of alcohol or drugs unless prescribed by a physician; random alcohol and drug testing; completion of an updated substance use evaluation following first positive test; and recovery meeting attendance. "To address his specific risk": no contact with the victim unless approved by the court; and maintain medication compliance. "To address general risk": no weapons possession; allow for search and seizure by probation or by law enforcement at the direction of probation; and completion of cognitive programming at the direction of probation.

At the sentencing hearing, the district court stated that it had the opportunity to review the PSR as well as the addendum that was filed. Neither the State nor Grantzinger had any additions or corrections to the PSR. The court asked if either side had any evidence to offer. The State said it "would reoffer Exhibit 2 previously received by the Court with respect to a bond review hearing a few months ago" that was received for that limited purpose. Grantzinger objected, stating:

> Your Honor, we object to the Court receiving this video for purposes of sentencing. This is evidence that the State had intended to introduce at trial to prove Mr. Grantzinger's guilt. It is unfairly prejudicial; however, if the Court decides to overrule that objection and review the video today, we would ask to continue sentencing until a later date because the video depicts a small child and causes a visceral reaction. I would like the Court to have time to process it and weigh it against any mitigating information [(the letter written by the child's mother and Grantzinger's statement, both of which are in the PSR)] that would balance that reaction.

The court noted that the rules of evidence do not apply to sentencing hearings, "so the issue would be more of a due process issue"; the court overruled Grantzinger's objection and allowed the video to be played at the hearing.

Grantzinger's counsel stated that Grantzinger had "virtually no criminal history," "does not have a criminal mind," was "a very thoughtful person," and "doesn't seem to be impulsive." Counsel further stated, "I don't think I have seen a criminal defendant who has harbored this much remorse"; "From the moment this situation began, he has held himself accountable, so much so that he wanted to just plead guilty at the arraignment and had to be urged by the judge to contact an attorney because at that time he didn't even believe that he deserved to be represented by an attorney." According to counsel, Grantzinger "wants nothing more than to be a father to his child, whatever that may look like"; "he's willing to put in the work to make things rights, as right as they can be." Counsel noted that there was an active custody case between the parents in district court, and that in the mother's victim impact statement in the current case "she does seem to want nothing more than for her son to know his father" and she "also seems to understand that things won't necessarily be normal." Counsel argued that if Grantzinger was sentenced to a long term of imprisonment he "will likely lose his job and all of the benefits associated with it, and . . . the child's mother . . . would be burdened by his lack of income." Counsel believed Grantzinger was an appropriate candidate for probation "because of the distinct lack of criminal history, [Grantzinger's] commitment to his mental health, and his desire to make things right." However, "if the Court is considering incarceration, we would ask to allow him some time to prepare and allow him time to apply for work release and house arrest if it is appropriate."

The State addressed the district court by saying, "It is true that Mr. Grantzinger does not have a criminal history, but I think it goes without saying that this is a concerning way to start one"; "This child was eight weeks old approximately at the time that this occurred." Pointing to the PSR, the State said that the incident occurred on "the first day that the child's mother was going to return to work and the child was going to be left alone for a significant period of time with Grantzinger," and "[w]hile the mother was getting dressed to go to work," she checked the video monitor, saw what was happening, and intervened. The State said, "It does not appear that the child has been permanently injured based off the conduct of [Grantzinger], but I would argue that's a grace of fortune more than anything else." After noting that, "[u]nfortunately, this type of case isn't one that the legislature has allowed for an initial sentence with a period of post-release supervision which I think might be an appropriate resolution in this type of case," the State said that based on the conduct and the extreme risk of harm to the child, it believed a period of incarceration was necessary and appropriate to reflect the serious nature of the offense.

Grantzinger personally addressed the district court stating that it was the "first day that I was going to be with [my son]" and "I think just everything collided without me realizing it"; "It all came down on me, and I unintentionally took it out on my son." Grantzinger was "aware how awful the events" were and "how disgusting my actions were." He said, "I hate myself" and "[t]he only thing keeping me going is the hope for rectifying the situation and being able to see my son again"; "I want to be the father he deserves." Grantzinger, noting his past struggles with anxiety, depression, and alcoholism, said he is "committed to recovery." He said he was getting mental health care, attending counseling, and managing his medication, and he was willing to "commit

and follow" programs and conditions of probation. Finally, Grantzinger apologized for "everything I did."

The district court stated that it had reviewed the PSR and addendum and had considered all of the "statutory and case law" sentencing factors. The court was "concerned" because "it appears that the motivation for the offense was issues that you were having with your significant other." The court continued:

On Page 5 of the [PSR], you mention that you believe that is the only thing that you or your therapist think makes sense is that you took your stress from the situation with your significant other and subconsciously directed it towards your eight week old.

The mentality that is necessary to inflict the knowing and intentional acts that you did is such that it causes this Court significant concern for the safety of others, including your child, even while on a period of supervision.

The court "was not swayed by watching the video in any way" because the "description [of] the video by the officer" (found in the PSR) was "pretty much . . . what Exhibit 2 portrayed." It appeared to the court "that had the mother not intervened, this would not have stopped." The court did not believe that Grantzinger was taking responsibility for his actions because in the PSR he mitigated the circumstances of the offense and mentioned to the interviewer that he felt the charges were excessive. The court found that Grantzinger was not an appropriate candidate for probation because it believed there was a substantial risk that Grantzinger would continue to engage in criminal conduct during any period of probation. Grantzinger was sentenced to 27 to 45 years' imprisonment. The court stated that a lesser sentence would depreciate the seriousness of the offense, promote disrespect for the law, would fail to serve as a necessary deterrent, and would put individuals at risk.

In his brief on appeal, Grantzinger argues that the district court abused its discretion by "denying probation and ordering such an excessively harsh sentence." Brief for appellant at 18. Grantzinger directs this court to Neb. Rev. Stat. § 29-2260 (Reissue 2016), which concerns factors that a court examines in determining whether to impose a sentence of probation or imprisonment, and he identifies several factors that he claims weigh in favor of a more lenient sentence. He points out that he has successfully completed probation in the past (criminal mischief from 2018) and had shown that he is willing and capable of rehabilitation. He contends that he "did not contemplate that his crime would cause or threaten serious harm" and that "the crime was a result of circumstances unlikely to recur." *Id.* at 16. "Given Grantzinger's commitment to his mental health, his lack of criminal history, ability to maintain employment, and that he does not appear to be a threat to society, treatment outside a correctional facility would be far more appropriate for Grantzinger's rehabilitation." *Id*. Alternatively, assuming that the denial of probation was not an abuse of discretion, the term of incarceration was excessive, and a "less severe term of incarceration" should have been imposed. *Id.* at 19-20.

To the extent that those factors may weigh in favor of a more lenient sentence, our review of a sentencing order is limited to an abuse of discretion standard. And because the appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life, a sentencing court is accorded very wide discretion in imposing a sentence. *State*

*v. Rogers*, 297 Neb. 265, 899 N.W.2d 626 (2017). Having considered the relevant factors in this case, we cannot find that Grantzinger's sentence was excessive, or an abuse of discretion, and his sentence is therefore affirmed. See *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020) (sentence imposed within statutory limits will not be disturbed on appeal absent abuse of discretion by trial court).

CONCLUSION

For the reasons set forth above, we affirm Grantzinger's conviction and sentence.

AFFIRMED.